JOHN R. LEWIS INC. and Glenn E. Hinton, Investments, Inc., Plaintiffs-Appellees,

v.

Hal C. NEWMAN, Defendant-Appellant.

No. 30715.

United States Court of Appeals, Fifth Circuit.

July 15, 1971.

Rehearing Denied Aug. 4, 1971.

M. R. Irion, Irion, Cain, Magee & Davis, Dallas, Tex., for defendant-appellant on appeal.

D. L. Case, Jack Pew, Jr., Dallas, Tex., for plaintiffs-appellees; Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., of counsel.

Before AINSWORTH, INGRAHAM and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge:

Plaintiff corporations brought this action to recover damages based on the alleged misrepresentations and deceptions of the defendant, Hal C. Newman, in connection with the January 1969 sales by Newman to each of the plaintiffs of 10,000 shares of unregistered stock[1] of Diversa, Inc. On the instructions of the Trial Judge, pursuant to Fed.R.Civ.P. Rule 49(a), the jury returned a special verdict in the form of written findings on individual issues of fact. The jury found, among other things, that the unregistered stock had no market value; that the plaintiffs had purchased it on the assurances of the defendant that he would replace the unregistered shares with the same number of registered, fully marketable shares of Diversa on or before July 2, 1969; and that on July 2, 1969, the fair market value per share of freely marketable shares of Diversa was $10.37½. Based on these findings and on the undisputed evidence that the defendant had refused to comply with the plaintiffs' demand for replacement of the shares, the Trial Judge entered judgment for the plaintiffs in the amount of $103,750 each.

The defendant appeals. We find merit in one of his contentions: that the judgment must be amended to require the plaintiffs, upon satisfaction of the award, to surrender to him the 20,000 unregistered shares. In all other respects, however, we affirm the judgment of the District Court.

I.

The plaintiffs are Washington state corporations engaged in the securities business in Seattle. John R. Lewis is president and one of four stockholders of the corporation that bears his name; Glenn E. Hinton is the sole stockholder of his company. Since about 1958, the plaintiffs have invested on the over-the-counter market, for themselves and their customers, in the stock of Diversa, Inc.,

1. "Unregistered stock" refers to stock which has not been registered with the Securities and Exchange Commission pursuant to the Securities Act of 1933 as amended, 15 U.S.C. §§ 77a–77aa.

a corporation headquartered in Dallas, Texas. In the course of their periodic visits to Dallas, Lewis and Hinton became acquainted with defendant Newman, an independent investor in close touch with the Diversa management and particularly with Gerald C. Mann, Sr., Diversa's president and chairman of the board.

In the latter part of 1968, Lewis and Newman met in Dallas and discussed the possible purchase by the plaintiff corporations of some unregistered Diversa stock. In December of 1968, Newman called Lewis and broached the subject again. There is a conflict in the testimony as to what was said on these occasions. Newman testified that Hinton and Lewis thought that unregistered Diversa stock was a bargain at $10 a share, and wanted to make an immediate and unconditional purchase. Hinton and Lewis testified that unregistered Diversa stock was worthless to them as an investment, and that they took an interest in Newman's proposal only because Newman led them to believe that the proceeds of the sale would go to Diversa and that Diversa badly needed the capital. Lewis and Hinton further testified that they agreed to buy unregistered stock at $10 per share only on the condition that Newman agreed to replace the unregistered stock with registered stock within six months of the sale.

The sale was arranged by the end of December. On or about January 2, 1969, plaintiffs each paid Newman $100,000, and shortly thereafter Newman delivered to each plaintiff 10,000 shares of unregistered Diversa stock. In March, Newman made it apparent that he considered himself bound only to use his best efforts to obtain registered stock for a possible exchange. Negotiations between Lewis, Hinton, Newman and the Diversa management failed, and when July and August came and went without compliance on Newman's part with the plaintiffs' demand, plaintiffs filed this suit.

The jury, in response to the questions submitted by the Trial Judge pursuant to Rule 49(a), found as follows:

1. Newman represented to the buyers that the purpose of the sale of unregistered stock was to enable Diversa to carry on foreign operations and that Gerald C. Mann, Sr. would guarantee that 20,000 shares of freely marketable common stock would be made available for exchange of the shares in question by July 2, 1969.

2. These representations were material and made to induce the plaintiffs to purchase the stock and were relied on by plaintiffs in purchasing the stock for $10 per share. They were also false.

3. Newman failed to disclose to the plaintiffs that the shares were being sold for his own account, and that he had purchased the shares at $5 per share shortly before the sale to plaintiffs was consummated, from an affiliated company of Diversa.

4. A reasonable man would attach importance to such undisclosed facts in determining whether to purchase the stock for $10 per share.

5. If said facts had been disclosed to plaintiffs, they would have regarded them as material in deciding whether or not to purchase the stock for $10 per share.

6. Newman entered into a verbal agreement with Lewis that the unregistered shares purchased would be replaced by Newman with a like number of fully marketable shares by July 2, 1969.

7. The unregistered stock had no market value on or about January 2, 1969, and none on or about July 2.

8. The fair market value of freely marketable shares of stock of Diversa on or about July 2, 1969, was $10.37½.

9. Newman, in making the representations in connection with the sale, acted without malice.

The $207,500 judgment entered for plaintiffs on the special verdict is general in form. The appellees contend that the verdict and judgment are consistent with each of the theories advanced in their complaint, i. e., common law fraud, breach of contract, and violation of anti-fraud provisions of the federal se-

curities laws—specifically, Section 17(a) of the Securities Act of 1933 (15 U.S.C. § 77q(a)) and Section 10(b) of the Securities Exchange Act of 1934 (15 U.S. C. § 78j(b)), as supplemented by SEC Rule 10b–5, 17 C.F.R. § 240.10b–5. This Circuit has never squarely determined whether a private civil action for damages lies for violations of Section 17(a).[2] It is now established beyond dispute, however, that such an action lies for violations of Section 10(b) and Rule 10b–5,[3] and we hold that the jury's tiffs under these provisions.[4] The state-law theories are not well briefed by the parties on appeal. Accordingly, and without prejudice to appellees' contention that the verdict will also sustain a judgment in their favor on these counts, we proceed to consider the appellant's points of error in the context of Section 10(b) and Rule 10b–5.

2. Section 17(a) reads as follows:

> "It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

> "(1) to employ any device, scheme, or artifice to defraud, or

> "(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

> "(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

This Court has decided appeals in cases brought under Section 17(a) and other sections of the securities laws together, without distinguishing the various provisions. See Smith v. Jackson Tool & Die, Inc., 5 Cir., 1969, 419 F.2d 152; Phillips v. Alabama Credit Corporation, 5 Cir., 1968, 403 F.2d 692, 693 (two cases). Discussions of the problem of overlap between Section 17(a) of the 1933 Act and Section 10(b) of the 1934 Act may be found in 1 A. Bromberg, Securities Law: Fraud—SEC Rule 10b–5, §§ 2.1–2.5 (1969); R. Jennings & H. Marsh, Jr., Securities Regulation: Cases and Materials 867–69 (2d ed. 1968); 3 L. Loss, Securities Regulation 1778–91 (2d ed. 1961), 6 Supplement at 3907–18 (1969).

verdict sustains a judgment for plain-

3. See Herpich v. Wallace, 5 Cir., 1970, 430 F.2d 792; see generally J. I. Case Company v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Reed v. Riddle Airlines, 5 Cir., 1959, 266 F.2d 314.

4. Section 10 of the Securities Exchange Act of 1934 provides in pertinent part:

> "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

> *   *   *   *   *

> "(b) To use or employ, in connection with the purchase or sale of any security * * *, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

SEC Rule 10b–5 provides:

> "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

> "(1) to employ any device, scheme, or artifice to defraud,

> "(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

> "(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

Though the scope of the protection afforded by Section 10(b) and Rule 10b–5 is still much in debate, it is settled in this Circuit and most others that these provisions protect not only defrauded sellers of securities, but defrauded buyers as well. See Herpich v. Wallace, 5 Cir., 1970, 430 F.2d 792, 806–810; Ellis v. Carter, 9 Cir., 1961, 291 F.2d 270; Fischman v. Raytheon Mfg. Co., 2 Cir., 1951, 188 F.2d 783; and cases cited in n. 6 infra. But cf. L. Loss, supra n. 1.

## II.

Appellant attacks the special verdict on three grounds. He argues that the jury was incorrectly instructed, that the evidence was insufficient to support certain of its findings, and that the Trial Judge erred in failing to submit to the jury certain interrogatories offered by appellant's counsel. We find the first two contentions to be without merit, and reject the third on the ground that the appellant's failure to move in timely fashion below precludes review.

■■■■ Newman contends that the brief instructions of the Trial Judge were incomplete and in part incorrect. We discern no substantial error. The Trial Judge instructed the jury that the term "material" as used in the interrogatories pertaining to Newman's alleged misrepresentations meant "of solid or weighty character, substantial, of consequence, not to be dispensed with, important." The conventional test for materiality in cases arising under Section 10(b) and Rule 10b–5 is whether a reasonable man would attach importance to the fact misrepresented in determining his course of action in the transaction in question. See List v. Fashion Park, Inc., 2 Cir., 1965, 340 F.2d 457, 462, cert. denied, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60; Gilbert v. Nixon, 10 Cir., 1970, 429 F.2d 348, 355–356, and cases cited therein. The purport of the conventional test and the one on which the jury was instructed appear to us, in the context of this case, to be the same. In any event, we are unable to discern any prejudice to the appellant.[5] Cf. Delancey v. Motichek Towing Service, Inc., 5 Cir., 1970, 427 F.2d 897, 902. Newman also contends that the charge did not properly apprise the jury of the importance of "the peculiar knowledge, interest and years of experience of the plaintiffs in the security business, and with reference to the stock in question." Normally it is enough, for purposes of Section 10(b) and Rule 10b–5, that the

defendant's misrepresentations be material, and that the plaintiff rely on them to his detriment. See Reyos v. United States, 10 Cir., 1970, 431 F.2d 1337, 1347–1348; List v. Fashion Park, supra, 340 F.2d at 462; 2 A. Bromberg, Securities Law: Fraud—SEC Rule 10b–5, §§ 8.3, 8.6 (1969). There was no evidence in this case of past dealings between plaintiffs and defendant which might have put them on notice that Newman was not acting for Diversa as he purported to be, or that he would refuse to perform as he agreed to do. We hold that the instructions given by the Trial Judge were adequate and complete. Cf. L'Urbaine Et La Seine v. Rodriguez, 5 Cir. 1959, 268 F.2d 1, 5.

■■■ Newman contends that the evidence was insufficient to support most of the jury's findings. The principal witnesses in the case were Lewis, Hinton, and Newman himself. The testimony of Lewis and Hinton amply supported the jury's findings as to the facts surrounding the transaction. Its finding on the fair market value of registered Diversa stock is not contested on appeal. In light of the other findings, the fair market value of the unregistered shares is immaterial: the defendant made no representations on this score, and the value of the unregistered shares is not an element in the calculation of plaintiff's damages. We conclude that substantial evidence supports the jury's verdict as to all material issues of fact. Cf. First Nat. Bank, Henrietta v. Small Business Admin., 5 Cir., 1970, 429 F.2d 280, 282.

■■■ Finally, Newman complains of the failure of the Trial Judge to submit to the jury certain additional questions to be answered as a part of the special verdict. Rule 49(a), Fed.R.Civ.P., provides that if the court omits from its charge "any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury

---

5. The instruction actually given has been criticized as unduly favorable to the defendant. See 2 A. Bromberg, supra n. 2, § 8.3 at 199 n. 11.

retires he demands its submission to the jury." This provision has an obvious salutary purpose and is deemed by some to be essential to the efficient and expeditious use of the special-verdict procedure. See generally 2B Barron & Holtzoff, Federal Practice and Procedure § 1053 (Rules ed. 1961), and authorities cited therein. Nothing in the record suggests that the defendant in this case ever secured a ruling from the Trial Judge on his proposed interrogatories, and the transcript indicates that he did not object when they were not included in the charge. His objections on appeal therefore come too late. United States v. H. M. Branson Distributing Company, 6 Cir., 1968, 398 F.2d 929, 937; Delta Engineering Corp. v. Scott, 5 Cir., 1963, 322 F.2d 11, 17, cert. denied, 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176; see 2B Barron & Holtzoff, supra, § 1053 at 334. The special verdict must stand as returned.

### III.

█ The Trial Judge rendered judgment for each plaintiff in the amount of $103,750, or $10.37½ (the jury's figure for the fair market value per share of registered Diversa stock on the date the plaintiffs were supposed to receive it) multiplied by the 10,000 shares sold to each plaintiff. Where a violation of Section 10(b) and Rule 10b–5 results in injury to a purchaser or seller of securities, federal courts may use any available remedy to make good the wrong done. J. I. Case Company v. Borak, 377 U.S. 426, 433–434, 84 S.Ct. 1555, 1560–

1561, 12 L.Ed.2d 423 (1964). Though the usual remedy in a Rule 10b–5 case involving a defrauded buyer is rescission and restitution,[6] we are satisfied that in this case, which involved not only factual misrepresentations on the original sale but a default by the seller on a related express agreement to exchange registered for unregistered stock, the measure of damages applied herein was proper.

█ Newman contends, however, that the plaintiffs must be denied judgment on the verdict for a variety of reasons. In the first place, he maintains, their recovery is barred by the fact that they are *in pari delicto* with him under Section 5(a)[7] of the Securities Act of 1933, 15 U.S.C. § 77e(a), which renders unlawful certain sales of unregistered stock. This contention is presented for the first time on appeal. The plaintiffs respond that the transaction falls within at least one of the several categories of transactions exempted from the proscription of Section 5(a) by Section 4,[8] 15 U.S.C. § 77d. Cf. United States v. Custer Channel Wing Corporation, 4 Cir., 1967, 376 F.2d 675, 677–680, cert. denied, 389 U.S. 850, 88 S.Ct. 38, 19 L. Ed.2d 119. The facts necessary to resolve this question were not developed below. Rule 8(c) of the Federal Rules of Civil Procedure provides—with reason, as this case illustrates—that the defense of illegality must be affirmatively pled. Newman, having failed to plead this defense below, may not exploit it now. Radio Corporation of America v. Radio Station KYFM, Inc., 10 Cir., 1970,

---

6. See Stevens v. Vowell, 10 Cir., 1965, 343 F.2d 374; 2 A. Bromberg, supra n. 2, § 9.1 at 226, and cases cited therein.

7. Section 5(a) reads as follows:
"Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—
"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

"(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

8. Section 4 provides in pertinent part:
"The provisions of [Section 5a] shall not apply to—
"(1) transactions by any person other than an issuer, underwriter, or dealer.
"(2) transactions by an issuer not involving any public offering."

424 F.2d 14, 17–18; Charm Tred Mills v. Erle P. Halliburton, Inc., 7 Cir., 1953, 202 F.2d 294, 297.

 Newman further contends that plaintiffs are entitled to recover none of their damages because they are "dealers and underwriters" and hence not subject to the protection of the anti-fraud provisions of the federal securities laws. He did not make this contention at trial, and does not articulate it clearly on appeal. The fact that the plaintiff corporations were and are in the business of buying and selling securities does not in itself bar them from the relief they seek under Section 10(b). See, e. g., A. T. Brod & Co. v. Perlow, 2 Cir., 1967, 375 F.2d 393, sustaining the right of a stock broker to recover from his customers under Rule 10b–5 for fraudulent failure to pay for securities purchased at their order. Concededly the plaintiffs here had a prior investment in Diversa which they stood ready to protect, if necessary, by furnishing additional capital to the company. We are unable to discern why this fact should be held to bar their recovery under the anti-fraud provisions of the securities laws, when it was the defendant's special knowledge of this fact that made his fraudulent scheme effective. We hold that the plaintiffs are members of the class entitled to the protection of Section 10(b) and Rule 10b–5.

We must resolve against Newman any question as to whether the plaintiffs tendered the unregistered shares with the requisite formality and whether they do now in fact own all 20,000 shares. The answer in each case turns on factual questions which were not submitted to the jury, and on which the District Court made no express finding. Pursuant to Rule 49(a), the District Court is deemed to have made a finding in accord with the judgment on the special verdict. See General Insurance Company of America v. Fleeger, 5 Cir., 1968, 389 F.2d 159, 162–163; 2B Barron & Holtzoff, supra, § 1053 at 335. With respect to tender, we note that the evidence indicated that the defendant adhered consistently from March of 1969 through the trial to the position that he was under no duty to effect the exchange, and that cases decided under Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l, hold that tender in the complaint itself is sufficient. See Chapman v. Dunn, 6 Cir., 1969, 414 F.2d 153, 160; Moses v. Michael, 5 Cir., 1961, 292 F.2d 614, 619; Stadia Oil & Uranium Company v. Wheelis, 10 Cir., 1957, 251 F.2d 269, 273–274; cf. Parker v. Baltimore Paint and Chemical Corporation, D.Colo., 1966, 39 F.R.D. 567, 568–569.

 The District Court awarded judgment to the plaintiffs without requiring them to surrender their unregistered stock. We hold, however, that the judgment must be modified so as to require plaintiffs to deliver the stock to defendant upon payment and satisfaction of the judgment.

Modified and affirmed.