**Anna G. LEWIS, et al.,
Plaintiffs–Appellees
Cross–Appellants,**

v.

**PARISH OF TERREBONNE, et al.,
Defendants–Appellees,**

**Godfrey Boquet, Defendant–Appellant
Cross–Appellee.**

No. 88–3500.

United States Court of Appeals,
Fifth Circuit.

Feb. 12, 1990.

Joseph W. Rausch, Metairie, La., for defendant-appellant, cross-appellee.

Samuel W. Ethridge, Stephen V. Vallot, Kenner, La., for Lewis.

Jerry L. Hermann, Houma, La., for Terrebonne Parish.

Before DAVIS and SMITH, Circuit Judges, and LITTLE, District Judge.[1]

LITTLE, District Judge:

The warden of a parish prison and a deceased prisoner's widow and children appeal various results of a civil jury trial. The bizarre, if not shocking, facts must be disclosed before venturing into the appellate review process.

1. District Judge of the Western District of Louisiana, sitting by designation.

## Facts

In May of 1985 David Lewis, Jr. was arrested on a charge of attempted forcible rape and was immured in the Terrebonne Parish jail in Houma, Louisiana. On 3 June 1985, Lewis told the nurse at the jail and the jail warden, defendant Godfrey Boquet, that he wanted to die and that someone was trying to kill him. Later that day Lewis claimed to have swallowed intentionally a large quantity of pills, the exact substance of which was never determined. The jail physician ordered Lewis' transfer to a local medical center to have his stomach pumped. That procedure was immediately performed by a physician in the emergency room of the medical center. The same physician classified Lewis as suicidal and suggested that Lewis be transported to New Orleans for a psychiatric examination. Lewis was returned to the Terrebonne jail late in the evening on 3 June.

In response to the emergency room physician's request, Lewis was transported to Charity Hospital in New Orleans on 4 June 1985. There, Lewis was examined by a psychiatrist. The psychiatrist's report was reduced to writing, placed in an envelope, sealed and given to the deputy charged with driving Lewis back to Houma. The deputy was unaware of the contents of the missive which he carried.

Upon return to the jail near noon on 4 June, Lewis attempted to escape and in so doing punched the deputy who had driven the car from the New Orleans hospital. In retaliation to the battery and escape attempt, Warden Boquet imposed upon Lewis the punishment of solitary confinement. Prior to the fracas, the deputy had placed the envelope containing the psychiatrist's advice on the booking desk at a time when Warden Boquet was in the vicinity of the booking desk.

The envelope remained unopened until after Lewis was found dead, a suicide in his solitary confinement cell. The contents of the letter revealed a medical opinion that Lewis was suicidal, and, accordingly, anti-suicidal precautions should be taken: Death dealing instrumentalities should be removed from the subject's possession and close observation should be employed.

The resulting lawsuit was refined and distilled to a section 1983 claim by Anna G. Lewis individually and as administratrix of the estate of David G. Lewis, Jr. and as tutrix of his minor children. Following a five-day trial and one and one-half days of deliberation, the nine-member jury made the following particular findings. They determined that David Lewis, Jr. had been denied medical care in deliberate indifference to his serious medical needs. They further opined that the actions of Warden Godfrey Boquet, while acting under color of state law, gave rise to violation of Lewis' constitutional rights and that such action was the proximate cause "of any damages sustained by the plaintiffs" (Interrogatory No. 9, Jury Verdict Tr. 1514). When asked what amount will fairly compensate Anna G. Lewis for her damages caused by the death of David Lewis, the jury responded "$0" (Interrogatory No. 10, Jury Verdict, Tr. 1514). The same response was made to the succeeding interrogatory dealing with the amount to compensate the decedent's four minor children (Interrogatory No. 11, Jury Verdict, Tr. 1515). The jury then, in response to Interrogatories No. 12 and 13, stated that the defendant Godfrey Boquet should pay punitive damages to the plaintiffs in the amount of "$6,279 (funeral costs)" (Interrogatory No. 13, Jury Verdict, Tr. 1515). Trial and post-trial rulings of the district judge frame the issues on appeal.

## Issues Raised on Appeal

Appellant Boquet asserts that ample evidence was lacking to support the jury determination of deliberate indifference to the decedent's serious medical needs. He also claims that there is no evidence to justify the punitive damage award. Finally, he claims that the defense of qualified immunity justifies verdict reversal.

Anna G. Lewis, also an appellant, contends that a new trial should have been granted because of errors on evidentiary rulings, failure to give a jury instruction, the inadequacy of the verdict and, general-

ly, jury confusion as evidenced by the unbalanced verdict.

We AFFIRM the trial court and REMAND to the trial court for resolution of an undecided issue.

■ The contention of defendant Boquet that there is insufficient evidence to support the jury determination of deliberate indifference to the decedent's serious medical needs is unavailing. The proper standard of review of rulings on motions for directed verdict and judgment notwithstanding the verdict is governed by *Boeing v. Shipman,* 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc):

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury.

*See also Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 305–06 (5th Cir.1989). Suffice it to say, the jury heard evidence from which they could deduce that Warden Boquet knew (1) that the deceased had expressed a death wish, (2) that the decedent alleged consuming an inordinate number of pills which required medical emergency treatment, (3) that the emergency room physician ordered a psychiatric examination, (4) that the deceased was transported to New Orleans from the jail for such an examination, (5) that the deceased was transported from New Orleans to the jail after the examination, (6) that the envelope given to the driver of the transporting vehicle was delivered to the jail, (7) that another jail employee believed the deceased to be suicidal and should not be left alone and (8) that the deceased was housed in a solitary confinement cell immediately prior to this death. More than mere negligence on the part of Boquet is evident. Boquet personally participated in the order for solitary confinement when he knew or should have known of the suicidal tendencies of his ward. The evidence, when considered in a light most favorable to the plaintiff, is more than adequate to justify a jury determination that Mr. Boquet was indifferent to the serious medical needs of Mr. Lewis. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1978); *Dickson v. Colman,* 569 F.2d 1310, 1311 (5th Cir.), *cert. denied,* 439 U.S. 897, 99 S.Ct. 259, 58 L.Ed.2d 244 (1978).

■ For the same reasons that the jury determination of liability should not be disturbed, so also should the punitive damage award remain intact. The instructions on the issue were correct. The evidence could be, and evidently was, analyzed and weighed by the jury to support a finding of such callousness as to justify a punitive damage verdict. *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).

■ We quickly dispose of the defendant's qualified immunity argument. The doctrine of qualified immunity may insulate a public official from personal exposure to liability if the damage causing action of the public official does not violate clearly established constitutional rights of which a reasonable person should have known. *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Morales v. Haynes,* 890 F.2d 708, 710 (5th Cir.1989). One need not find a "goose case" to imbue a warden at a jail with a constitutional duty to protect a prisoner prone to suicide from self-destruction. Reference to *Gagne v. City of Galveston,* 805 F.2d 558 (5th Cir.1986), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d

764 (1987), does not deter us from our course. The custodian in *Gagne* had no knowledge of suicidal tendencies harbored by the detainee. The custodian of one arrested and detained on a charge of public intoxication does not, according to *Gagne*, have a constitutional duty to protect the detainee from self-destruction. But a detainee with suicidal tendencies, a condition known or which should have been known by the warden, requires such protective action in that the detainee presents a risk of damage to himself and other inmates. The substance of *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir.1981), is most enlightening, if not directive. Thus, the defense of qualified immunity is not available to Warden Boquet.

The trial court refused to admit into evidence a consent decree entered into among Terrebonne Parish officials and various plaintiffs in 1981. The instant case has as its focus the indifferent attitude of officials at a jail to the serious medical needs of an inmate. The trial judge correctly ruled that the consent decree is immaterial to that issue. Further, we find no proffer by the plaintiff after the adverse ruling. Thus, under the authority of *Foster v. Ford Motor Co.*, 621 F.2d 715, 721 (5th Cir.1980), the objection is waived.

The testimony of Seymour Goodman was omitted by the trial judge. Mr. Goodman would have testified as to the decedent's future wage loss if the decedent had earned the minimum wage for the balance of his work life expectancy. The trial judge excluded the testimony of expert economist Goodman as there was no satisfactory foundation laid that the decedent had a work history which would support a minimum wage calculation for the balance of his work life expectancy (Tr. 599–600). To reverse the trial judge ruling, we must find an abuse of discretion. *Dawsey v. Olin Corp.*, 782 F.2d 1254 (5th Cir.1986). We have reviewed the two meager record citations of the plaintiff supporting a future wage loss claim. The trial judge's determination that there was not enough evidence that the deceased had an earnings history to justify the testimony of a professional economist was not an abuse of discretion. An expert's opinion must be preceded by facts in evidence and cannot be the basis of speculation or conjecture. *Reichenbach v. Smith*, 528 F.2d 1072, 1074 (5th Cir.1976). The ruling is affirmed.

We also fail to find an abuse of discretion when the trial judge refused to admit into evidence a liability insurance policy providing coverage to certain defendants. The plaintiff credits the paltry punitive damage award by the jury to the judge's failure to admit evidence of insurance. We find no authority that evidence of insurance must be admitted when a claim for punitive damages has been made. Evidence of an abuse of discretion is absent.

Among defendants' witnesses was one Paul McGarry, a physician and expert in forensic pathology. He performed an autopsy and testified that the deceased suffered injuries consistent with a death by hanging. He did not find evidence of any other trauma (Tr. 659, 672–73). The trial judge refused the plaintiff's request to call three rebuttal witnesses, two of whom were secretaries in the law office of plaintiff's attorney and the other a secretary in Dr. McGarry's office. The trial judge ruled that the evidence was not true rebuttal evidence and had nothing to do with the issue of the professional examination conducted by Dr. McGarry. The controversy, if any existed, centered upon the physician's request from plaintiff's counsel for payment of a bill prior to release of a professional opinion letter. The discretion employed by the trial judge will not be reversed.

Plaintiff complains that the court failed to give a jury instruction covering a particular event. Specifically, counsel for plaintiff stated:

> I was taking notes and I don't see where you instructed the jury in reference to supervisory personnel if they are present and a misfortune takes place that there are impunities [sic] to them. I think that is the law and I had the jury instructions prepared that I asked be permitted and I

didn't hear you say it. You might have. I was taking notes.

To which the court replied:

I don't think I said it that way you're saying it now. I think you should object.

Which was followed by this remark from counsel:

I object to that. My appreciation of the law, if supervisory personnel is present they're liable under that section. That is my impression of it.

(Tr. 772). Reviewing the voluminous instruction in its entirety leads to the irrefutable conclusion that the instructions were complete and regular. They conveyed the sense of counsel's request. Failure to follow the letter of the submitted instruction, which was given in substance, is not reversible error. *Koonce v. Quaker Safety Products & Mfg.*, 798 F.2d 700 (5th Cir. 1986).

■ Plaintiff cites a potpourri of improprieties which occurred during trial, any one of which precipitated such confusion or prejudice that a new trial is required. Considered singularly or in globo, the irregularities do not rise to the stuff of which reversible error is made. References were made in closing argument to the decedent's arrest on charges of forcible rape. The fact of the charge itself was one reason why the deceased feared for his life. The remarks were not inflammatory, nor were they the subject of objection from counsel for the plaintiff. Quite to the contrary, counsel for plaintiff reminded the jury in his closing that the deceased had been charged with a crime, but not convicted of that crime. Plaintiff's motion for new trial on the grounds of inflammatory statements was denied. The record does not reveal an abuse of discretion in denying the motion. *J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 704 F.2d 787, 799 (5th Cir.1983).

■ On two occasions the trial court described to the jury that the scope of jury inquiry was limited to the claim of the violation of Mr. Lewis' constitutional rights. In making the point the court distinguished the federal suit and its foundation upon deprivation of a constitutional right from a pending state court suit and

its foundation upon acts of negligence. The court's remarks were instructive, educational and permissive. Likening the court's teaching to a "collateral source" thereby minimizing the potential damage to be awarded is absurd. The judge made a proper illustration of that which was and that which was not the object of the jury deliberation. Reversal for so doing is denied. *Young v. City of New Orleans*, 751 F.2d 794, 798 (5th Cir.1985).

■ The verdict form is so inconsistent in its inquiries with the guidance of the jury instructions that wholesale confusion and misdirection were produced, thus justifying a new trial. That is the complaint of the plaintiff. Before turning the jury loose to decide the case the court asked for objections to the interrogatories (Tr. 772). No objection by plaintiff's counsel appears in the record prior to the verdict reached by the jury.

The court, and with tacit approval of plaintiff's counsel, submitted the case to the jury by preparing specific questions to resolve factual disputes. This procedure is explicitly authorized by Rule 49(a) of the Federal Rules of Civil Procedure. Not only does the rule describe the procedure but also provides for the resolution of the unsubmitted factual question to the jury:

The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. *If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted*

*unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict* (emphasis added).

This rule provides that plaintiff has waived the right to a jury trial on the omitted issue. This court has consistently construed the language of Rule 49(a) in that fashion. *See Molex, Inc. v. Nolen,* 759 F.2d 474, 478 (5th Cir.1985); *John R. Lewis, Inc. v. Newman,* 446 F.2d 800, 804–05 (5th Cir.1971). The omitted issue in this case is the damages, if any, suffered by the decedent as a result of his self-inflicted hanging.

Plaintiff cites our decision of *Petes v. Hayes,* 664 F.2d 523, 525 (5th Cir.1981) for the proposition that inconsistency between the special interrogatories and the instruction is not to be permitted. The point is well and correctly stated, but inapplicable to the instant case. In *Petes,* an objection to the interrogatories had been made in a timely fashion by the offended party which is the essential predicate to granting relief. *Id.* at n. 3. Counsel failed to object in the instant case and has waived the right to jury determination of the omitted issue. We will address the disposition of the omitted issue later in this opinion.

Plaintiff describes as an "abuse of discretion" the jury verdict finding liability on the part of Warden Boquet, no compensatory damages and punitive damages in an amount identical to (and labeled as such) the funeral charges. Such a jury finding evidences, according to plaintiff, a lack of understanding and disregard of the instructions so as to justify a new trial. As we enunciated in *Caldarera v. Eastern Airlines, Inc.,* 705 F.2d 778, 784 (5th Cir.1983):

> We do not reverse a jury verdict for excessiveness except on "the strongest of showings." The jury's award is not to be disturbed unless it is entirely disproportionate to the injury sustained. (citations omitted) (quoted with approval in *In Re Air Crash Disaster Near New Orleans, La.,* 767 F.2d 1151, 1155 (5th Cir.1985)).

Jury awards are the result of factual determinations. Those determinations should not be tampered with absent a "grave abuse of discretion" or if the verdict is "so gross or inordinately large as to be contrary to right reason" or if there has been a "clear abuse of discretion with respect to the assessment of damages." *See Bridges v. Groendyke Transport, Inc.,* 553 F.2d 877, 880 (5th Cir.1977) and Fifth Circuit authorities cited therein. The jury awarded "$0" to Mrs. Lewis as damages for her husband's death and a similar non-sum to the decedent's children (Tr. 1514–15). Is that response an insensitive total disregard of the evidence of the plight and feelings of the decedent's survivors? A record review could not cast the jury with that degree of inattention. Mrs. Lewis' description of her feelings and those of her children precipitated by the death of David Lewis, Jr. encompass only a few lines of the seven pages of direct examination by her attorney. On cross-examination the widow admitted that her marriage was marred with periodic separations. The jury hearing the oral presentation and observing the demeanor of the witness in light of the entire trial could conclude that neither the widow nor the children presented credible evidence of compensable loss. In fact, Mrs. Lewis' testimony is detailed in one respect only and that is the emotional loss suffered by a child not fathered by Mr. Lewis.[2] The zero awards do not rise to the level of "shocking" so as to justify manipulation by this court.

In concluding our comments on the jury verdict we must mention the specific award of punitive damages of $6,279 fol-

---

2. The court has read the testimony of the decedent's mother, brother, sister, nephew and neighbor. Not one witness was asked any questions concerning his or her knowledge of the decedent's emotional or monetary connection with his spouse or his children. Concomitantly, no questions were asked of family members of their knowledge of any emotional or financial devastation visited upon the widow and children subsequent to and due to the death of David Lewis, Jr.

lowed by the words "(funeral costs)." Plaintiff suggests that an award of punitive damages in the amount of funeral expenses evidences a total lack of understanding by the jury and a disregard for the distinction between compensatory and punitive damages. We fail to apply that analysis to the jury verdict. The jury sent the following message to the trial judge:

Can we award punitive damages to the fixed amount of funeral costs to be specified in the court record?

(Tr. 1510). The judge responded:

The amount of punitive damages is to be set *by you.* Thus, you could specify that the amount is the amount which the evidence indicates as being the cost of the funeral and related expenses.

(Tr. 1512). The jury response was exactly as authorized by the communication from the judge to the jury. The court, prior to receiving the jury verdict, filed in the record each question from the jury and each written response from the court. The court stated for the record that "the responses to the notes, in each instance, had been examined by the attorneys in all respects and, thereafter, sent in to the jury...." (Tr. 775). Counsel for plaintiff affirmed that there were no objections to the court's response to the questions (Tr. 775). We note that many of plaintiff's objections appear post-trial and could have been brought to the court's attention during the trial. As we said in *Cunningham v. Healthco., Inc.,* 824 F.2d 1448, 1458 (5th Cir.1987), "defenses not raised or argued at trial are ordinarily waived by the parties failing to raise them." Similarly, language recently employed by this court in *Risher v. Aldridge,* 889 F.2d 592, 596 (5th Cir. 1989) is applicable:

We note at the outset that Risher only expressly raised the failure to follow procedures argument at the time of her motion for a new trial. This Court does not look with favor upon tardy arguments that are brought to the lower court's attention post-trial after counsel has had

the opportunity to salvage what she may from the record (citations omitted).

We need not determine whether any legal impediment exists for an award of punitive damages where no award was made for compensatory damage because, as we shall discuss in the following paragraphs, on remand a compensatory damage award will be considered.

■ Finally, we revisit the item which was omitted from the jury's determination viz, the damages, if any, suffered by David Lewis, Jr. prior to his self-induced hanging. As we said, the plaintiff and defendant have waived jury determination of that issue by failing to assert a timely objection to the jury interrogatories. The applicable rule, 49(a) of the Federal Rules of Civil Procedure, provides direction for the disposition of the omitted issue:

As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

The record does not reveal that the court made a finding on the issue of damages, if any, suffered by the deceased, David Lewis, Jr. The jury did find liability on the part of defendant Warden Boquet. Thus, according to the rule, the court is deemed to have made such a finding as to underlying liability. *Reo Industries v. Pangaea Resource Corp.,* 800 F.2d 498, 501 (5th Cir.1986); *Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 606–07 (5th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974). The court has not, however, quantified the liability. That is, did the deceased suffer damages and what is the amount of money which will compensate the now deceased for the damages, if any, he suffered prior to his death? The record has vivid descriptions from the physician who performed the autopsy on the condition of the body and havoc wrecked on the body prior to death (Tr. 649–52—testimony of Paul McGarry, M.D.). The fair implication from the reading of that testimony is that death was not instantaneous.[3]

---

**3.** Dr. McGarry distinguished death by suicidal hanging, death by hanging at the gallows and death by strangulation (Tr. 650).

Like Sisyphus, we are unable to roll the stone to the crest of the hill.[4] Accordingly, this case is REMANDED to the district court for the sole purpose of determination by the district court judge on the transcribed record of the damages, if any, experienced by David Lewis, Jr. prior to his self-induced death. In all other respects, the judgment is AFFIRMED.

---

**4.** Homer, The Odyssey, XI, 594–602.

