IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-10971
Summary Calendar
_____


DEANA ROMERO, Individually and as
Legal Representative of the Estate
of Conrad James Romero,

                              Plaintiff-Appellee,

                    versus

DONLEY COUNTY, TEXAS; TONI LYNN BOHLAR,
Deputy, Individually and in her
official capacity,

                              Defendants,

      and

WILLIAM J. THOMPSON, Individually and
in his official capacity as the Donley
County Sheriff; CHARLES EDWARD BLACKBURN,
Deputy, Individually and in his official
capacity,

                              Defendants-Appellants.

_____

Appeal from the United States District Court for
the Northern District of Texas
(2:94-CV-22)
_____

May 14, 1996

Before REAVLEY, DUHÉ and WIENER, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

William Thompson and Charles Blackburn, claiming qualified immunity from suit, bring this interlocutory appeal of a district court order denying their motion for summary judgment. We dismiss the appeal as to Thompson and Blackburn in their official capacities, and reverse the summary judgment as to Thompson and Blackburn individually.

BACKGROUND

Defendant Thompson is the Sheriff of Donley County, Texas. He arrested Conrad Romero on burglary charges on February 13, 1992, and transported Romero to the Donley County jail, arriving at the jail at about 1:00 a.m. on February 14, 1992. Defendant Blackburn, a deputy sheriff, was at the jail at the time of Romero's arrival. Blackburn filled out certain jail intake forms, including one where he indicated that the inmate did not exhibit behavior suggesting the risk of suicide. Thompson directed Blackburn to place Romero in the jail's day room.

The day room contained a 40-foot long orange extension cord attached to a television set. The toilet area of the day room was screened, and over the toilet was a metal bar or pipe. Deputy sheriff Toni Bohlar was the only jailer on duty at the time of Romero's suicide.[1] Pursuant to Sheriff Thompson's policy the day room was off-limits to female officers. The evidence is disputed as to whether Bohlar made inmate checks every thirty minutes, as she claimed. She admitted that she could not see

_____

[1]Bohlar was also sued in this case, but the district court granted summary judgment in her favor.

2

Romero when she made her checks. An inmate trustee found Romero hanging from the bar over the toilet at 5:55 a.m. Romero had used the extension cord to hang himself.

Fifteen months earlier, another pretrial detainee, Juan Silva, had committed suicide by hanging himself in one of the cells at the jail.[2] Plaintiff in our case claims that even after this suicide the training of jail personnel in suicide detection and prevention was woefully inadequate, as was the level of staffing.

Romero's widow brought this suit individually and on behalf of the estate of Romero, asserting violation of Romero's civil rights under 42 U.S.C. § 1983 and state law claims. Defendants Thompson and Blackburn appeal the district court's order denying their motion for summary judgment.

## DISCUSSION

An interlocutory order denying a motion for summary judgment by defendants claiming qualified immunity is immediately appealable, unless the order resolved a fact-related dispute about "whether or not the evidence in the pretrial record was

---

[2]Silva's suicide also led to a civil rights suit. As in our case, the district court denied a summary judgment motion wherein the defendants claimed qualified immunity. We dismissed the appeal of the order denying summary judgment as to Sheriff Thompson and another defendant. *Silva v. Donley County*, No. 93-1308 (5th Cir. July 28, 1994). While unpublished opinions prior to January 1, 1996 are precedent in our circuit, Fifth Circuit Rule 47.5.3, we conclude that a new rule applies in our case because of our intervening en banc decision in *Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996), discussed below.

3

sufficient to show a genuine issue of fact for trial."[3]  The Supreme Court more recently explained, however, that jurisdiction over an interlocutory appeal in this context is not lacking simply because "[m]aterial issues of fact remain," since "*[e]very denial of summary judgment ultimately rests upon a determination that there are controverted issues of material fact . . . ."*[4] Instead, the order is not appealable if the district court's "sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred . . . ."[5]  In this case, we believe that we have jurisdiction because, deferring completely to plaintiff's factual claims of alleged conduct, her § 1983 claim cannot stand.

In *Hare v. City of Corinth*,[6] a summary judgment case involving the suicide of a pretrial detainee, we addressed the standard for determining qualified immunity.  We held that the defendant's conduct must amount to more that mere negligence or even gross negligence.[7]  Instead, liability attaches under § 1983 for the episodic act or omission of a state jail official only where the official acted or failed to act with deliberate indifference to the detainee's needs.[8]  Deliberate indifference

_____

[3]*Johnson v. Jones*, 115 S. Ct. 2151, 2153 (1995).

[4]*Behrens v. Pelletier*, 116 S. Ct. 834, 842 (1996).

[5]*Id.*

[6]74 F.3d 633 (5th Cir. 1996)(en banc).

[7]*Id.* at 645-6.

[8]*Id.* at 647-48.

means that the official "'knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'"[9]

A.   *The County*

Deana Romero sued Thompson and Blackburn individually and in their official capacities as the sheriff and deputy sheriff of Donley County.  Defendants appeal in their individual and official capacities.  A suit against county officials in their official capacities is a suit against the county.[10]  We have no jurisdiction to entertain an interlocutory appeal by the county.[11]  Accordingly, the appeal by the county is dismissed.[12]

B.   *Individual Liability*

Blackburn filled out the inmate screening form for Romero, indicating that Romero was not a suicide risk.  Blackburn swore by affidavit that "Romero seemed liked a typical arrested individual" and "Romero's conduct did not show any signs that he was going to commit suicide."  Like Blackburn, Thompson swore in his affidavit that Romero was a typical arrestee who did not seem to be suffering from any mental problems.  Another deputy and

---

[9]*Id*. at 648 (quoting *Farmer v. Brennan*, 114 S. Ct. 1970, 1984 (1994)).

[10]*Rhyne v. Henderson County*, 973 F.2d 386, 392 n.2 (5th Cir. 1992).

[11]*Nicoletti v. City of Waco*, 947 F.2d 190, 191-92 (5th Cir. 1991).

[12]We note, however, that on this record there is no underlying constitutional violation on which to hold the county liable under § 1983, as discussed below.

5

Bohlar had personally observed Romero and gave sworn statements to the same effect. Neither defendant believed that Romero had been drinking, although Blackburn placed a question mark beside the question on the booking form inquiring whether the inmate appeared to be under the influence of barbiturates or other drugs.

The district court, in discussing Blackburn's conduct, noted evidence that Blackburn did not completely fill out the screening form and, at Thompson's direction, placed Romero in the day room. Plaintiff also relies on evidence that the cord had been in the day room for a long enough period of time for Blackburn and Thompson to have known that it was there.

The deliberate indifference standard compels the conclusion that Thompson's and Blackburn's conduct or inaction could give rise to liability only if they knew that Romero faced a substantial risk of committing suicide. Placing an inmate in a day room with an extension cord cannot amount to deliberate indifference unless they had such knowledge.

Thompson's and Blackburn's sworn statements in the record, based on their observations of Romero, indicate that Romero did not display any suicidal tendencies. Plaintiff failed to raise a genuine issue of material fact suggesting otherwise, i.e. that these officers *knew* that Romero faced a substantial risk of suicide. Plaintiff offered the affidavit of an expert stating that "Romero was subject to tremendous trauma due to the probable loss of his job and the resultant embarassment and shame

associated with the arrest," and that as a young prisoner (Romero was 36), he was a higher than usual risk for suicide according to national surveys. The expert affidavit sheds no light on whether Blackburn or Thompson personally and subjectively knew that Romero was a substantial suicide risk. We have noted that "[p]olice personnel are not required to 'unerringly detect suicidal tendencies;' such an exacting standard 'requires the skill of an experienced medical professional with psychiatric training. . . .'"[13]

Plaintiff also offered evidence that Romero was quiet after his incarceration, hesitated in answering questions posed by Blackburn, and did not exercise his right to make a phone call. Romero told Blackburn that he was a first-time offender, Thompson viewed him as a first-time offender, and Thompson knew his employer would be notified about the arrest. At most this evidence is "merely colorable" on the critical issue of whether defendants *knew* that Romero faced a substantial risk of suicide, and is not "such that a reasonable jury could return a verdict for the nonmoving party."[14] Accordingly, summary judgment should have been granted in favor of Thompson and Blackburn on the § 1983 claim, since "there is no issue for trial unless there is

---

[13]*Evans v. City of Marlin*, 986 F.2d 104, 107 (5th Cir. 1993) (quoting *Burns v. City of Galveston*, 905 F.2d 100, 104 (5th Cir. 1990).

[14]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

7

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[15]

The evidence presented here by plaintiff falls far short of the evidence presented in other cases where we have held that defendants might be found liable for the suicide of a pretrial detainee. In *Hare*, we remanded for further proceedings in light of our clarified standard for imposing liability, where summary judgment evidence was offered that the police were informed that the detainee was a heavy drug user, she gave an interview "in a defensive, 'fetal-type' position," admitted she was a drug addict, was observed by the police going through drug withdrawal, attempted to destroy the interview videotape, was described by witnesses as emotionally distraught, "frantic," and "hyper," and threatened to commit suicide in the presence of the police captain and "in a serious, believable tone of voice."[16]

---

[15]*Id*. at 249.

[16]*Hare*, 74 F.3d at 636-37. *See also Lewis v. Parish of Terrebone*, 894 F.2d 142, 145 (5th Cir. 1990) (affirming jury verdict in favor of plaintiffs where jury heard evidence "(1) that the deceased had expressed [to the jail nurse and warden] a death wish, (2) that the decedent alleged consuming an inordinate number of pills which required medical emergency treatment, (3) that the emergency room physician ordered a psychiatric examination, (4) that the deceased was transported to New Orleans from the jail for such an examination, (5) that the deceased was transported from New Orleans to the jail after the examination, (6) that the envelope [containing a medical opinion that the deceased was suicidal] given to the driver of the transporting vehicle was delivered to the jail, (7) that another jail employee believed the deceased to be suicidal and should not be left alone and (8) that the deceased was housed in a solitary confinement cell immediately prior to this death."); *Partridge v. Two Unknown Police Officers of the City of Houston*, 791 F.2d 1182, 1184 (5th Cir. 1986) (reversing dismissal of complaint alleging that decedent became hysterical during questioning after arrest,

We also conclude that Thompson cannot be held liable for failing to properly supervise or train other employees in his charge.  We held in *Doe v. Taylor Indep. Sch. Dist.*[17] that the standard for imposing liability on a municipality should apply to an individual to whom a municipality had delegated responsibility for the direct supervision of employees.  That standard imposes liability where "the official, by action or inaction, demonstrates a deliberate indifference to [the plaintiff's] constitutional rights."[18]   In *Hare*, we clarified that municipal liability turns on objective deliberate indifference:

> Our opinion in this case makes clear that to prove an underlying constitutional violation in an individual or episodic acts case, a pre-trial detainee must establish that an official acted with *subjective* deliberate indifference.  Once the detainee has met this burden, she has proved a violation of her rights under the Due Process Clause.  To succeed in holding a municipality accountable for that due process violation, however, the detainee must show that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with *objective* deliberate indifference to the detainee's constitutional rights.[19]

---

arresting officer was told that decedent had suffered a nervous breakdown, decedent was wearing two medical alert bracelets, decedent became agitated and violent in police car, decedent deliberately struck his head against police car seat divider and attempted to kick out the doors and windows of the car, arresting officers did not call to anyone's attention the aberrant behavior, police department knew decedent was a mental patient and had records that he had attempted suicide during an earlier confinement, defendant was booked as "heart and mental," and decedent was placed in solitary confinement where he hung himself.)

[17]15 F.3d 443, 453-54 (5th Cir.) (en banc), *cert. denied*, 115 S. Ct. 70 (!994).

[18]*Id*. at 454.

[19]*Hare*, 74 F.3d at 649 n.4.

9

Both *Doe* and *Hare* make clear, however, that imposing liability on a supervisor or municipality requires proof that the plaintiff's constitutional rights were violated. *Hare*, in the passage quoted above, requires an "underlying constitutional violation." Similarly, *Doe* requires proof that the supervisor's deliberate indifference "caused a constitutional injury to the [plaintiff]."[20] Given that Blackburn and Thompson established that they did not individually act or fail to act with deliberate indifference to Romero's needs, there is no underlying constitutional tort on which to hold Thompson liable in his capacity as a supervisor.

Further, we have held that "[a] municipality should be required to provide its police officers with minimal training to detect '*obvious* medical needs of detainees with *known, demonstrable,* and serious mental disorders.' . . . In the absence of any manifest signs that the Decedent was a danger to herself, the city's failure to train police personnel to detect potential suicidal impulses does not give rise to a deprivation of constitutional rights."[21] Given the failure of proof that Romero was an obvious and manifest suicide risk, liability premised on Thompson's alleged failure to train his staff in suicide prevention and detection must also fail.

---

[20]15 F.3d at 454.

[21]*Evans*, 986 F.2d at 107-08 (quoting *Burns*, 905 F.2d at 104).

10

C.    *State Law Claims*

Plaintiff also asserted state law claims against Blackburn and Thompson for negligence, statutory wrongful death, and statutory survival. The individual defendants claim qualified immunity from suit under Texas law. We have jurisdiction to address this issue.[22]

We have described Texas' law of qualified immunity as "substantially the same as federal immunity law."[23] Government officials are immune from suits arising from performance of their discretionary duties in good faith as long as they were acting within the scope of their authority.[24] Here there is no question that Blackburn and Thompson were acting within the scope of their authority and that all decisions regarding training and the placement and observation of Romero in the day room were discretionary in nature. Actions are discretionary unless "the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment. . . ."[25]

Thus the question is whether these defendants acted in good faith. Both swore that they harbored no ill will toward Romero,

---

[22]*Cantu v. Rocha*, 77 F.3d 795, 803-04 (5th Cir. 1996); *Morin v. Caire*, 77 F.3d 116, 119-20 (5th Cir. 1996).

[23]*Cantu*, 77 F.3d at 808.

[24]*Id.*

[25]*City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994)(quoting *Rains v. Simpson*, 50 Tex. 495, 501 (1878)).

11

and discharged their duties toward him in good faith and without any intent to cause him harm.

Under Texas immunity law, "[a]n official acts in 'good faith' if *any* reasonably prudent officer could have believed that the conduct was consistent with the plaintiff's rights."[26]  "To controvert the officer's summary judgment proof on good faith . . . the plaintiff must show that '*no* reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts,'" and "'if officers of reasonable competence could disagree on this issue, immunity should be recognized.'"[27]  In adopting this test the Texas Supreme Court stated that it is derived substantially from the federal test for deciding immunity under § 1983.[28]  We have recognized that federal constitutional standards do not require such training of officers that they will "unerringly detect suicidal tendencies."[29]  Likewise, we conclude that Texas law does not require every officer to possess such skills where the detainee, as here, did not manifest "known, demonstrable, and

---

[26]*Cantu*, 77 F.3d at 809 (emphasis added).

[27]*Chambers*, 883 S.W.2d at 657 (emphasis added) (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) and *Malley v. Briggs*, 106 S. Ct. 1092, 1096 (1986)).

[28]*Chambers*, 883 S.W.2d at 656.

[29]*Burns*, 905 F.2d at 104.

12

serious mental disorders."[30]  Accordingly, Blackburn and Thompson are entitled to immunity under state law.[31]

## CONCLUSION

The appeal as to Thompson and Blackburn in their official capacities is DISMISSED.  The summary judgment as to Thompson and Blackburn individually is REVERSED and REMANDED with instructions to dismiss them as defendants.

---

[30]*Id.*

[31]We express no opinion as to whether summary judgment on state law claims against the county is appropriate, or whether such claims should proceed in federal court in the absence of any federal claims.  *See Evans*, 986 F.2d at 108-09 (discussing municipal liability under state law for inmate suicide); *Rhyne*, 973 F.2d at 395 (discussing discretion of district court to dismiss state claims after dismissal of federal claims).