**Naomi WRIGHT, Plaintiff-Appellant,**

v.

**Odell WAGNER et al.,
Defendants-Appellees.**

No. 79–3118.

United States Court of Appeals,
Fifth Circuit.
Unit A

March 30, 1981.

M. N. Garcia, Gary Kilgore, Austin, Tex., for plaintiff-appellant.

Richard W. Davis, Charles J. Wittenburg, San Angelo, Tex., for defendants-appellees.

Before BROWN, THORNBERRY and WILLIAMS, Circuit Judges.

THORNBERRY, Circuit Judge:

Ronnie Bernard Mitchell had a history of mental problems that resulted in his discharge from the United States Navy and a brief commitment to a mental hospital in Texas. On January 27, 1976, he was arrested in San Angelo and subsequently transferred to the Tom Green County jail. Mitchell became violent and incoherent, breaking up the chair in his cell before being placed in a stripped cell. The next day, Mitchell was found with the legs of his trousers around his neck and through the bars of his cell. Mitchell had suffered no injury, but his trousers were nonetheless confiscated. Later that day, Mitchell created another disturbance, and a jail matron discovered that he had blood under his nose. Mitchell informed her that he had intentionally banged his head against the wall and that he had no regard for his physical well-being. Finally, on January 29th, Mitchell was found dead in his cell. An autopsy found two large contusions on his forehead and a massive subdural hemorrhage over the right cerebral hemisphere. The primary cause of death was determined to be circulatory failure from brain hemorrhage due to subdural hematoma. The autopsy found no connection between the contusions and the hemorrhage.[1]

Mitchell's mother, father, and two minor children brought this suit against the county, the county sheriff, and certain county officials, alleging both a civil rights violation under 42 U.S.C. § 1983 and a claim for wrongful death under state law. After a jury trial, the district court entered a judgment in favor of defendants. We affirm.

Plaintiffs attempted to prove that defendants failed to comply with Tex.Rev.Civ. Stat.Ann. art. 5115 (Vernon Supp. 1980), which provides certain objective standards for Texas jails. Article 5115 provides in part:

No person suspected of insanity, or who has been legally adjudged insane, shall be housed or held in a jail, except that such a person who demonstrates homicidal tendencies, and who must be restrained from committing acts of violence against other persons, may be held in a jail for a period of time not to exceed a total of twenty-four (24) hours, during which period he shall be kept under observation

---

1. At trial, plaintiffs' medical expert testified that a subdural hematoma often will not show up until six months after the injury causing it. He further testified that it would be unusual for one to show up immediately.

continuously. At the end of the twenty-four (24) hour period, such person shall be released or taken to a hospital or mental hospital. Furthermore, for such temporary holding of each person suspected of insanity, or who has been legally adjudged insane, there shall be provided a special enclosure or room, not less than forty (40) square feet and having a ceiling height of not less than eight (8) feet above the floor. Furthermore, the floor and the walls of such enclosure shall be provided with a soft covering designed to protect a violent person, temporarily held therein, from self-injury or destruction. One hammock, not less than two (2) feet, three (3) inches wide and six (6) feet, three (3) inches long, made of elastic or fibrous material shall be provided in each such special enclosure.

They argued that defendants failed to place Mitchell in a padded cell in violation of this provision of article 5115. According to plaintiffs, this statutory violation not only entitled them to recover in an action under state law for wrongful death, but also established as a matter of law a violation of the eighth amendment, which could be redressed under 42 U.S.C. § 1983. Article 5115, however, unambiguously calls for a padded cell only for individuals suspected of insanity or legally adjudged insane, and the jury specifically found that the defendants neither suspected nor should have suspected Mitchell of insanity. Plaintiffs necessarily challenge that finding on appeal.

■ The sufficiency of the evidence supporting a jury finding is not reviewable on appeal unless the party seeking review made a motion for directed verdict at trial. *Little v. Bankers Life & Casualty Co.*, 426 F.2d 509, 510 (5th Cir. 1970) and cases cited therein. Plaintiffs failed to do so. Thus, our inquiry on review is limited to whether there was *any* evidence supporting the finding. *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 298 (5th Cir. 1978); *Urti v. Transport Commercial Corp.*, 479 F.2d 766, 769 (5th Cir. 1973).

■ Appellants argue that the only evidence in support of this finding was the testimony of interested jail employees and that because of the suspect nature of that testimony, it cannot satisfy the any evidence criterion. Their untenable position, then, is that the jury was not entitled to give any weight whatsoever to that testimony. They argue that the employee testimony is of "little evidentiary value" and can be given "little weight." Brief for Appellants, at 9–10. Since "little" is more than "not any," they have conceded too much.

Even absent the testimony of the jail employees, the jury could have returned the same finding on the basis of other evidence in the record. In an effort to prove that defendants suspected or should have suspected that Mitchell was insane, plaintiffs adduced evidence of his bizarre behavior while in jail. The jury, on the basis of its own evaluation of this evidence, may very well have concluded that Mitchell's behavior was not so unusual that those observing him should have suspected him of insanity.

We therefore cannot disturb the finding that defendants neither suspected nor should have suspected that Mitchell was insane. This precludes the conclusion that defendants violated article 5115 in the manner alleged. Plaintiffs thus failed to establish a fact that was essential under the theories of recovery presented to us on appeal.

■ There is also a serious flaw in plaintiffs' argument that a failure to comply with the provisions of article 5115 would, as a matter of law, constitute a violation of Mitchell's eighth amendment right to be free from the infliction of cruel and unusual punishment. It is axiomatic that the state action that fails to comport with legislative standards may nonetheless pass constitutional muster. There is simply no authority for the proposition that housing a prisoner in a facility that fails to meet every requirement of article 5115 constitutes cruel and unusual punishment as a matter of law. At best, then, the legislative standard for Texas jails established by article 5115 is just some evidence of what society might consider to be in accord with evolving standards of decency or standards of fairness. We think that a failure to place Mitchell in a padded cell or to other-

wise deal with his violent behavior would not violate eighth amendment standards absent deliberate indifference to his condition and the likely consequences of that condition.[2] "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Fielder v. Bosshard,* 590 F.2d 105, 107 (5th Cir. 1979).

■ Appellants contend that the trial court erred in submitting a confused and misleading charge. We need not address this contention, for appellants failed to make a timely and sufficiently specific objection at trial.[3] Fed.R.Civ.P. 51. Nonetheless, we have reviewed the jury instructions and are satisfied that the challenges made for the first time on appeal lack merit.[4]

Finally, appellants argue that the trial court abused its discretion by admitting evidence of Mitchell's use or suspected use of drugs and alcohol. We note first that they themselves introduced civil commitment

---

2. In attempting to show that Mitchell's eighth amendment rights were violated, plaintiffs chose to rely only on the alleged violation of article 5115. The jury finding that defendants neither suspected nor should have suspected Mitchell of insanity is therefore sufficient to defeat the § 1983 claim in its entirety. We note, however, that even if plaintiffs had not limited themselves to the article 5115 theory, but had tried to show that Mitchell endured cruel and unusual punishment in a broader sense, the jury finding that all defendants had acted in good faith would preclude any recovery under § 1983.

Everyone agrees that the good faith finding is sufficient to insulate the individual defendants from liability. Not everyone agrees on the extent to which that finding precludes a recovery from Tom Green County. For the reasons that follow, we think that the good faith finding would relieve the county from liability as well.

In *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the Supreme Court held that a municipality enjoys no immunity from liability flowing from its constitutional violations and may not assert the good faith of its officers as a defense to such liability. We, however, are not suggesting that the good faith finding would render the county immune from liability flowing from an eighth amendment violation. Rather, since the good faith findings are inconsistent with the proposition that any agent of the county acted with deliberate indifference to Mitchell's condition, the eighth amendment simply was not violated. See *Fielder v. Bosshard,* 590 F.2d 105, 109–10 (5th Cir. 1979). Unlike Mitchell, the plaintiff in *Owen* actually suffered a violation of his fourteenth amendment rights, notwithstanding the good faith of the officials involved, and the Supreme Court held that the municipality must compensate him for that injury. In contrast, the good faith finding in the context of this eighth amendment claim, a claim premised on the acts or omissions of jail personnel, establishes that Mitchell was *not* deprived of his right to be free from cruel and unusual punishment. There was thus no injury for which he could be compensated under § 1983. Good

faith in this context is not providing immunity in the *Owen* sense, but actually defeating liability.

3. Attorneys for plaintiff contend that the trial court allowed them insufficient time to examine the instructions. The short, but most appropriate, answer to this contention is that they should have asked for more time.

4. In determining whether a jury charge was confusing, misleading, or prejudical, the test is not whether the charge was faultless in every particular, but whether the jury was misled in any way and whether it understood the issues and its duty to determine those issues. *Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 300 (5th Cir. 1978).

First, appellants attack the charge relating to article 5115 as misleading. The trial court charged as follows:

This Act provides that no prisoner suspected of insanity or who has been legally adjudged insane shall be housed or held in jail except if such person demonstrates homicidal tendencies, and it is necessary to restrain him from committing acts of violence against other persons, such person may be held in a jail for twenty-four hours. During such temporary holding, such person suspected of insanity or who has been legally adjudged insane, shall be provided with a cell that has soft covering designed to protect a violent person from self-injury or destruction.

Record, vol. II, at 430. This charge tracks precisely the substance of article 5115. There is simply no merit in the assertion that the unambiguous language of article 5115 requires a padded cell for *any* violent prisoner. Either the prisoner must have been legally adjudged insane or the jail officials must suspect him of insanity.

Appellants also challenge the charge relating to the definition of insanity:

"MENTAL DISEASE OR DEFECT" does not include an abnormality manifested only by repeated criminal conduct, suicide, intoxication or mental deficiency or anti-social con-

records and police records that contained substantial evidence of Mitchell's involvement with drugs and alcohol. We note further that counsel for plaintiffs did not merely fail to object to the admission of Mitchell's service record, but, in response to a specific inquiry by the trial court, stated unequivocally that they had no objection to its introduction. Record, vol. IV, at 484. The service record is replete with references to the drug and alcohol problems that plagued Mitchell during his naval career. Given their explicit refusal to object to the introduction of the service record at trial, we find it remarkable that counsel should ask for the opportunity to change their minds on appeal. This contention is frivolous.

For the reasons above, we AFFIRM the judgment of the district court.

duct. You are further advised that insanity *may be brought about by the use of hallucinogenic drugs or alcohol.*
Record, vol. II, at 430. We see no contradiction, confusion, or prejudice in this charge.

Finally, appellants assert that the jury may have been misled into thinking that ignorance of the law would be a defense to the wrongful death claim. The jury had been instructed that "violation of the statute is excused where the defendant did not know and should not have known of the particular circumstances requir-

ing that he comply with the statute." Record, vol. II, at 441. We think it reasonably clear that "[knowledge] of the particular circumstances" refers to whether defendants knew or should have known that Mitchell was insane, and not to whether defendants knew or should have known of the existence and requirements of article 5115. Further, any ambiguity was resolved when the court subsequently instructed the jury that a public official is charged with knowledge of the duties imposed on him by statute. Record, vol. II, at 450.