**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 93-7192

---

RICHARD HARE, Natural Father and
Next Friend of Haley Hare, a Minor,
ET AL.,

                                        Plaintiffs-Appellees,


versus


CITY OF CORINTH, MS., a Municipal
Corporation, ET AL.,

                                        Defendants,

FRED JOHNSON, ETC., BILLY BURNS, ETC.,
JAMES DAMONS, ETC., BRENDA MOORE, ETC.,

                                        Defendants-Appellants.

---

Appeal from the United States District Court
for the Northern District of Mississippi

---

( October 13, 1994 )


ON REHEARING


Before POLITZ, Chief Judge, KING and DAVIS, Circuit Judges.


POLITZ, Chief Judge:

The opinion of the court issued on June 10, 1994 is withdrawn
and the following is substituted.

On appeal is the claim of qualified immunity by Officer Billy Clyde Burns, Police Chief Fred Johnson, and police dispatchers Brenda Moore and James Damons, all members of the police department of Corinth, Mississippi, in this 42 U.S.C. § 1983 action arising out of the suicide of Tina Hare in that city's jail. Concluding that summary judgment was inappropriate because of disputed questions of fact and, accordingly, that this appeal presents more than a question of law, the appeal is dismissed.

## Background

On the morning of July 4, 1989, Tina Hare was arrested for petty larceny and forgery and was incarcerated in the city jail in Corinth, Mississippi. Richard Hare spoke with his wife by telephone shortly after her arrest. She sounded very frightened; she had never before been in jail.

At 10:00 a.m. Officer Burns interviewed Tina Hare and learned of her addiction to dilaudid which she had been funding by forging checks. He observed that she was depressed and displayed signs of withdrawal. Sitting in the fetal position she told Burns about her thoughts of suicide the night before and her feelings of unfitness as a mother. When Burns left the room briefly she attempted to destroy the videotape being used to record the interview.

Around noon Tina Hare's parents arrived. She was frantic and begged her mother to get her out of jail. Officer Burns was aware of her emotional state and acknowledges that she told him that if he put her back in the cell she would kill herself. He says that he did not take her seriously. Her father did. Burns refused to

2

release Tina Hare ostensibly until he could get all the allegedly forged checks and complete his investigation. In addition, Burns was displeased with her attempt to destroy the videotape. Despite the parents' pleas that their daughter be released on bond so that they could take her to a scheduled appointment at a rehabilitation center the next day, Burns decided that she would stay in jail that night. Burns gave the parents his assurance of their daughter's safety.

During oral argument counsel described pertinent aspects of the Corinth city jail, its layout and operation. The sole means of supervision of the interior of the cells was by an audio monitor. There were camera monitors but they viewed only the hallway of the jail, affording no visual observations inside the cells. The cells were located three floors above the dispatcher. Jail trusties could go on each floor but they did not have keys to the cells. Only the dispatcher had those keys but the dispatcher was not allowed to leave the dispatcher's station while on duty.

Burns stated that Chief Johnson instructed him to put Tina Hare in an isolated cell nearest the camera monitors and trusty station. Chief Johnson denies that he designated the cell where she was to be placed. She previously had been strip-searched, and when Burns put her in a cell he took her shoes and checked for a belt. Burns saw a blanket on the bunk and considered the possibility of its fatal use but concluded that Tina Hare did not have sufficient strength to tear it into strips.

Burns told Moore, the dispatcher on duty, about Tina Hare's withdrawal symptoms and her suicide threat and he told Moore to keep an eye on her. Burns mistakenly believed that Moore would be on duty until 10:00 p.m. In fact, at 5:00 p.m. Moore was replaced by dispatcher Damons. Moore says that she relayed to Damons the information Burns had provided; Damons denies this.

Burns left the station sometime after 3:00 p.m. At 6:00 p.m. he called from his home to check on Tina Hare's condition. Burns told Damons to have the trusty check her every 45 minutes. Damons sent a trusty to Tina Hare's cell. The trusty found her hanging from the bars of her cell by a noose fashioned from strips of the blanket. The trusty had no key for the cell; he immediately notified Damons. Damons, in accordance with jail procedures, could not leave his post. He called Burns. Tina Hare was left hanging. From the summary judgment record before us we cannot determine whether she was alive or dead when first found by the trusty. Informed by Damons that Tina Hare was hanging in her cell, Burns instructed Damons to leave her there until the State Investigator arrived.

Three and one-half months prior to Tina Hare's suicide another prisoner had committed suicide in the Corinth city jail by hanging himself with his belt.

Richard Hare sued Burns, Johnson, Moore, and Damons in their official and individual capacities as well as the City of Corinth, Mayor Edward S. Bishop, former Mayor Jack Holt, and the City of Corinth Board of Aldermen, alleging that the defendants' deliberate

4

indifference to his wife's psychiatric needs violated 42 U.S.C. § 1983 and Mississippi's wrongful death statute.  After completion of discovery both parties filed motions for summary judgment.  The district court granted defendants' motion with regard to the state law claim but refused to grant Johnson, Burns, Moore, and Damons summary judgment based on qualified immunity in their individual capacities.[1]

## Analysis

Burns, Johnson, Moore, and Damons maintain that the district court erred in not granting them summary judgment in their individual capacities.[2]  When addressing the qualified immunity issue we must first consider whether the asserted constitutional injury involved a clearly established right at the time of the unfortunate event.[3]  Thereafter we consider whether the defendants acquitted their duty to detainee Tina Hare and are entitled to summary judgment on the grounds of qualified immunity.

A. Clearly Established Constitutional Injury

In reviewing the denial of a summary judgment motion based on a claim of qualified immunity, the Supreme Court has taught that the first inquiry is whether the plaintiff has asserted a violation of a constitutional right.  If so, we must then determine whether

---

[1]814 F.Supp. 1312.

[2]See **Mitchell v. Forsyth**, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (recognizing defendants' right to file an interlocutory appeal upon denial of qualified immunity).

[3]**Johnston v. City of Houston**, 14 F.3d 1056 (5th Cir. 1994).

that right was clearly established at the time the events took place.[4] Hare asserts that the defendants knew or should have known from a previous suicide the danger of placing his wife in an isolated cell where she could not be reached or rescued timely because of the jail configuration and procedures. He further asserts that by detaining his wife under these conditions, the defendants acted with deliberate indifference to the possibility that she would take her own life. Although, as discussed later, the contours of the right are somewhat different from that described by Hare, Hare has asserted a violation of a constitutional right.

To be clearly established, the contours of the constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[5] It is not necessary that there be a case which is factually identical or which holds the specific action at bar unlawful. Rather, the unlawfulness of the action must be apparent in light of the existing law.

---

[4]**Siegert v. Gilley**, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."). Accord **Samaad v. City of Dallas**, 940 F.2d 925, 940 (5th Cir.1991) ("In **Siegert**, the Court holds that a court addressing a claim of qualified immunity should first consider 'whether the plaintiff asserted a violation of a constitutional right at all' before reaching the possibly unnecessary question of whether the plaintiff asserted a violation of a 'clearly established' right.").

[5]**Anderson v. Creighton**, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

In **Estelle v. Gamble**[6] the Supreme Court held that the eighth amendment prohibition against cruel and unusual punishment protects convicted inmates against prison officials who act with deliberate indifference to their serious medical needs.  However, in **Bell v. Wolfish**[7] the Court made clear that pretrial detainees are shielded by a broader fourteenth amendment due process right to be free of punishment.  Under **Wolfish**, a condition of pretrial detainment does not constitute punishment if it is reasonably related to a legitimate governmental objective.[8]

In **Partridge v. Two Unknown Police Officers of Houston**,[9] we applied **Wolfish** to an action seeking to recover against jail officials for the wrongful death of a pretrial detainee who committed suicide in the jail.  Noting that "[p]retrial detainees are often entitled to greater protection than convicted persons," we held that "pretrial detainees are entitled to at least the level of medical care set forth in **Estelle**."[10]  Because the plaintiff had alleged conduct constituting deliberate indifference, we did not consider whether breach of a lower standard would visit liability on the defendants.

---

[6]429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

[7]441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).  See also **City of Revere v. Massachusetts General Hosp.**, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (failure to provide medical care to a prisoner being apprehended by the police can rise to the level of a fourteenth amendment due process violation).

[8]441 U.S. at 539, 99 S.Ct. 1874, 60 L.Ed.2d at 468.

[9]791 F.2d 1182 (5th Cir. 1986).

[10]**Id.** at 1186 (internal quotation omitted).

In **Cupit v. Jones**,[11] we considered the question left open in *Partridge* -- precisely what duty the jail officials owe a pretrial detainee in need of medical care.  We concluded that

> pretrial detainees are entitled to reasonable medical care unless the failure to supply that care is reasonably related to a legitimate governmental objective . . . [W]e believe [the distinction between the medical care owed to pretrial detainees and that owed to convicted prisoners] must be firmly and clearly established to guide district courts in their evaluation of future cases involving the constitutionality of all conditions imposed upon pretrial detainees.[12]

Thus, when Tina Hare committed suicide in 1989, the jail officials were under a clearly established constitutional duty to provide pretrial detainees with reasonable care for serious medical needs, unless the deficiency reasonably served a legitimate governmental objective.[13]  The defendants' reliance on **Burns v. City of Galveston**[14] to support their argument that they are entitled to qualified immunity unless the plaintiff established deliberate indifference is misplaced.  Burns' suit was against a municipality, not officers in their individual capacities.  Municipalities are

---

[11]835 F.2d 82 (5th Cir. 1987).

[12]**Id.** at 85.

[13]See **Thomas v. Kipperman**, 846 F.2d 1009 (5th Cir. 1988); **Van Cleave v. United States**, 854 F.2d 82 (5th Cir. 1988); **Simpson v. Hines**, 903 F.2d 400 (5th Cir. 1990) (**Cupit** clearly established reasonable medical care standard).  Other courts of appeals have chosen to apply the **Estelle** standard in the context of pretrial detainees, rather than the reasonable medical care standard.  See, e.g., **Ervin v. Busby**, 992 F.2d 147 (8th Cir.), cert. denied, 114 S.Ct. 220, 126 L.Ed.2d 176 (1993).  However, a principle that has been clearly established within this circuit does not lose its status simply because other circuits disagree.  **Boddie v. City of Columbus, Miss.**, 989 F.2d 745 (5th Cir. 1993).

[14]905 F.2d 100 (5th Cir. 1990).

8

only liable for the policies and customs consciously and purposefully adopted.[15]

B. Summary Judgment

We next examine whether the appellants are entitled to summary judgment on their qualified immunity defense.[16] Summary judgment is proper only if the movant demonstrates an absence of genuine issues of material fact.[17] If disputed factual issues material to qualified immunity exist summary judgment is not appropriate.[18]

The summary judgment record is replete with evidence that the custodial officers knew or should have known of Tina Hare's vulnerability to suicide. Her father heard and considered deadly serious the same threat Burns heard and dismissed. Burns actually heard additional threatening statements. Burns stated that Chief Johnson instructed him to place the young woman in the cell nearest the monitors and trusty station. The chief denies this. Burns placed her in the cell and checked to see if she had a belt. He saw the blanket on the bed, realized its potential deadly use, but opted not to remove it based on his assessment of her lack of strength to tear it into strips. He shared his concerns with

---

[15]**Id.** at 103.

[16]**Johnston v. City of Houston**, 14 F.3d 1056 (5th Cir. 1994).

[17]**Celotex Corp. v. Catrett**, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

[18]**Feagley v. Waddill**, 868 F.2d 1437 (5th Cir. 1989).

9

dispatcher Moore and instructed her to keep an eye on Tina Hare and to alert the trusties to do likewise. These actions would be consistent with a real and valid concern that the detainee might attempt suicide, as was Burns' call to the station to inquire about her condition shortly after arriving home. Burns was under the impression, when he left the jail just after 3:00 p.m., that Moore would be the dispatcher until 10:00 p.m. He was in error; Damons relieved Moore at 5:00 p.m. As noted, Moore says she relayed Burns' concerns and instructions; Damons denies receipt of same.

Hare faults the individual defendants for placing his wife, who the officers knew was potentially suicidal, in an isolated cell which was not visually monitored and which could not be reached by the trusty or dispatcher on duty. Because of the suicide three and one-half months before, the custodial officers arguably knew that if Tina Hare attempted suicide they could not meaningfully respond to her needs, giving due consideration to the jail layout and the practices and procedures in place.[19] Nevertheless Tina Hare was placed in the isolated cell and, after being discovered, she was

---

[19]During oral argument counsel for the defendants argued that these claims cannot be lodged against the defendants in their individual capacities because they were following orders and procedures. Whether the steps taken by the individual defendants were pursuant to established policy is yet to be determined. The Eighth Circuit addressed the argument posed by counsel in **Villanueva v. George**, 659 F.2d 851 (8th Cir. 1981) (en banc), holding that while officers may assert qualified immunity if they were following orders, "if they knew or should have known that their [failure to act was] violating the plaintiff's constitutional rights, ... they may not hide behind the cloak of institutional loyalty." **Id.** at 855. We agree with our Eighth Circuit colleagues. It is for the jury to determine whether these officers knowingly failed to remedy unconstitutional conditions of confinement.

left hanging for an indeterminate time. It is for the trier-of-fact to determine whether under these circumstances appellants denied Tina Hare reasonable medical care and, if so, whether a legitimate governmental objective justified this denial. At the very least a genuine factual dispute is presented which renders summary judgment inappropriate. Because this appeal presents more than a pure question of law the denial of summary judgment is not appealable and this appeal is, accordingly, DISMISSED.[20]

---

[20]**Mitchell; Johnston; Feagley.**