Richard **HARE,** individually and in his official capacity as administrator of the estate of Tina Hare, and as natural father and next friend of Haley Hare, a minor, Plaintiff,

v.

**CITY OF CORINTH, MISSISSIPPI,**
et al., Defendants.

Civil Action No. 1:91cv248–D–D.

United States District Court,
N.D. Mississippi,
Eastern Division.

Nov. 22, 1996.

Ronald Dale Michael, Booneville, MS, for Plaintiff.

Susan Fahey Desmond, Jackson, MS, for Defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

Upon remand of this cause from the Fifth Circuit Court of Appeals, this court again takes up the motion of the defendants for the entry of summary judgment on the plaintiff's claims. After careful consideration of the defendants' motion and all of the submissions before the court, the undersigned finds that the motion is not well taken and shall deny it.

## I. Procedural Background

 The plaintiff originally filed this suit on September 11, 1991. After engaging in discovery, the parties filed with this court cross motions for summary judgment. This court granted in part and denied in part those motions by memorandum opinion and order dated March 1, 1993. *Hare v. City of Corinth,* 814 F.Supp. 1312, 1327 (N.D.Miss. 1993) ("*Hare I*"). The undersigned denied the motions as to the custodial defendants' claim of qualified immunity against the plaintiff's claims arising under 42 U.S.C. § 1983. *Hare I,* 814 F.Supp. at 1327. The defendants appealed this court's order, and a three-judge panel of the Fifth Circuit Court of Appeals dismissed the appeal. *Hare v. City of Corinth,* 22 F.3d 612, 616 (5th Cir. 1994) ("*Hare II*") ("Because this appeal presents more than a pure question of law the denial of summary judgment is not ap-

pealable....."). That opinion and order of the Fifth Circuit was later withdrawn, however, and replaced by a subsequent opinion and order to the same effect. *Hare v. City of Corinth,* 36 F.3d 412, 417 (5th Cir.1994) ("*Hare III*"). This was not the end of the Fifth Circuit's attention to the case, for it later granted an *en banc* rehearing. *Hare v. City of Corinth,* 74 F.3d 633, 650 (5th Cir. 1996) ("*Hare IV*"). Upon this latest consideration of this court's order denying summary judgment, the Fifth Circuit created new law in this circuit and declared:

> In sum, we hold (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pre-trial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had *subjective* knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

*Hare IV,* 74 F.3d at 650 (emphasis added); *see also Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (adopting "deliberate indifference" standard for Eighth Amendment conditions of confinement claim); *Sanderfer v. Nichols,* 62 F.3d 151, 154–55 (6th Cir.1995) (applying *Farmer* deliberate indifference standard to pretrial detainee medical care claim); *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir.1995) (same).

In making its decision in 1993, this court was without the benefit of the 1994 United States Supreme Court decision of *Farmer v. Brennan,* and instead had relied upon previous law which stated that state jail officials were liable for any action of reckless indifference to a pretrial detainee's "vulnerability to suicide" of which those officials *knew or should have known. Hare I,* 814 F.Supp. at 1320–21; *see Colburn v. Upper Darby TP.,* 946 F.2d 1017, 1024 (3rd Cir.1991); *Lewis v. Parish of Terrebonne,* 894 F.2d 142, 145–46 (5th Cir.1990). Because the Fifth Circuit adopted a standard for liability which required *subjective* knowledge of the risk of

suicide instead of the *objective* standard utilized by this court, the court of appeals reversed this court's order and remanded the case to the undersigned for application of the new standard to the extent that it is relevant to the defendants' claim of qualified immunity. *Hare IV*, 74 F.3d at 650.

## II. Factual Background

The factual basis underlying this cause has been previously recited by this court as well as the Fifth Circuit more than once, and the undersigned finds no reason to re-invent the wheel at this juncture. *See, e.g., Hare IV*, 74 F.3d at 636–38; *Hare III*, 36 F.3d at 413–14; *Hare II*, 22 F.3d at 613–14; *Hare I*, 814 F.Supp. at 1314–17. It is sufficient at this point to direct the reader to those previous recitations of fact and state that Corinth law enforcement officials housed Tina Hare in the Corinth City Jail in Corinth, Mississippi, after her arrest on outstanding warrants for petty larceny and forgery. While housed in the city jail, Ms. Hare committed suicide. This action followed.

## III. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir.1994). "Where the record, taken as

a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1362, 89 L.Ed.2d 538 (1986); *Federal Sav. & Loan Ins. v. Kralj*, 968 F.2d 500, 503 (5th Cir.1992). The facts are reviewed drawing all reasonable inferences in favor of the party opposing the motion. *Matagorda County v. Russell Law*, 19 F.3d 215, 217 (5th Cir.1994). With these principles in mind, the court now takes up the defendants' motion.

## IV. Discussion—Liability of the Individual Defendants under 42 U.S.C. § 1983

■ As has now been established by the Fifth Circuit, in order to prevail on the merits of his claim in this case against the individual defendants, the plaintiff will have to first show that the officials in question had actual, subjective knowledge of a substantial risk that Tina Hare would attempt to commit suicide. Secondly, the plaintiff will have to establish that those officials responded with deliberate indifference to that risk.

### A. Tina Hare's "serious medical need"

■ The defendants argue to the court that they had no constitutional duty to prevent Tina Hare from committing the act of suicide in this case because such a risk implicated no "serious medical need" which triggered the constitutional duties owed to her. Defendants' Supplemental Brief, p. 4 (alleging that "The Constitution prohibits the State from being deliberately indifferent to serious medical needs, it does not place an affirmative duty on the state to keep an inmate from committing suicide.") This argument is based upon the defendants' self-supplied premise that an inmate or detainee must suffer from some sort of mental illness in order to trigger the state's duty to protect them from suicide. The defendants provide no relevant authority for this proposition, however [1], and the undersigned finds the as-

---

1. The defendants do direct the court to a decision involving the apparent suicide of an allegedly insane pretrial detainee. *Wright v. Wagner*, 641 F.2d 239 (5th Cir.1981). In *Wright*, the Fifth Circuit upheld a jury's verdict for the defendants which included a specific finding that prison officials had no knowledge that the detainee had mental problems. *Wright* is distinguishable in many respects, not the least of which is the fact that that plaintiff's claim revolved around a pris-

sertion incredulous. While evidence of a defendant's knowledge of a detainee's mental problems is certainly relevant to both the merits of a plaintiff's claim as well as the defendant's entitlement to qualified immunity, there is no basis for a finding that knowledge of an inmate's or detainee's existing mental illness is an essential requisite to the maintenance of such a claim.

■ *Hare IV* speaks to the duty owed by the state to prevent suicide by those who are incarcerated:

> Whether the State's obligation is cast in terms of a duty to provide medical care *or protection from harm*, its ultimate constitutional duty is to "assume some responsibility for [the] safety and general well-being" of persons whose state-occasioned confinement renders them unable to fend for themselves. The underlying purpose of requiring a state jail official to provide medical care to a pretrial detainee is to prevent the detainee from suffering further physical pain or harm. Imposing a constitutional duty upon jail officials to prevent physical abuse of a detainee, or to halt a beating that has already begun, serves the same underlying purpose. As *DeShaney* [*v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ] makes clear, the State's responsibility in both types of cases springs from the fact of incarceration and the resulting obligation to provide for the detainee's basic human needs. Given such similarities, the same legal measure should govern the due process rights of a pretrial detainee to medical care and to protection from harm or violence.

*Hare IV,* 74 F.3d at 644 (cites omitted) (emphasis added); *see also Lewis v. Parish of*

*Terrebonne,* 894 F.2d 142, 145 (5th Cir.1990) ("One need not find a 'goose case' to imbue a warden at a jail with a constitutional duty to protect a prisoner prone to suicide from self-destruction."). The defendants also premise their argument upon the assumption that the plaintiff's claim in this case arises from their duty to provide medical care. It is certainly viable under that theory, for a substantial risk of death, regardless of the source, most assuredly implicates a "serious medical need." In any event, the State's distinct duty to protect Ms. Hare from harm or violence also provides a basis for the claims before the court today, and the Fifth Circuit draws no constitutional distinction between the two. The defendants most certainly owed a duty to Ms. Hare to prevent her from committing[2] suicide, regardless of whether she suffered from a particular diagnosed mental illness. The determination of the extent of that duty, however, has resulted in the protracted nature of this litigation.

B. Lack of Subjective Knowledge

■ The defendants next argue to this court that there is insufficient evidence that any of them possessed actual knowledge of the danger that Tina Hare would commit suicide. To fulfill his burden at the present stage, however, the plaintiff need not show actual knowledge of the risk. He need only show that there is a genuine issue of material fact as to whether the defendants had knowledge of a substantial risk of serious harm to Ms. Hare:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact *subject to demonstration in the usual ways,* including inference from circumstantial evidence, cf. Hall 118 (cautioning against "confusing a mental state with the proof of its existence"), and a factfin-

on official's duty under Texas statutory law to an insane prisoner. *Wright,* 641 F.2d at 240 (discussing claim as arising from duty imposed by Tex.Rev.Civ.Stat.Ann. art. 5115 (Vernon Supp. 1980)).

**2.** The defendants also allude to the possibility that citizens possess a constitutional right to commit suicide. This court need not even reach the issue, for regardless of the existence of any such right, it does not affect the duty of the

defendants to protect from harm the persons in their custody. Notable, however, is the fact that the United States Supreme Court has recently granted a writ of certiorari to review a Ninth Circuit decision which established such a "right to suicide," at least where the persons are terminally ill and their deaths are "imminent and inevitable." *Washington v. Glucksberg,* — U.S. ——, 117 S.Ct. 37, 135 L.Ed.2d 1128 (1996); *Compassion in Dying v. State of Wash.,* 79 F.3d 790 (9th Cir.1996).

der may conclude that a prison official knew of a substantial risk *from the very fact that the risk was obvious.*

*Farmer,* at 842, 114 S.Ct. at 1981, 128 L.Ed.2d at 828 (emphasis added). While the ultimate question in this court's analysis is now different than it was when this court last took up this cause, the same evidence relevant to the question of whether a reasonable official should have known of a substantial risk is also probative to whether the defendant officials in fact were aware of a substantial risk of harm. As the relevant evidence is unchanged, there is little to dissuade this court from finding that its original holding on the cross motions for summary judgment was correct even in light of the new standard of liability pronounced by the Fifth Circuit. *Hare I,* 814 F.Supp. at 1322. This is particularly true in light of the nature of the evidence before this court, and if for no other reason there is a genuine issue of material fact as to whether the defendants "knew of a substantial risk from the very fact that the risk was obvious." *Farmer,* at 842, 114 S.Ct. at 1981, 128 L.Ed.2d at 828.

### B. Deliberate Indifference

 Throughout their submissions to this court, the defendants repeatedly argue that the plaintiff is required to show that the defendants possessed some "subjective intent to cause harm" to Tina Hare in order to establish deliberate indifference. *E.g.,* Defendants' Supplemental Response, p. 12–14, 18. While a subjective intent to harm would most certainly establish liability, such an intent to harm is not required. "Under the [deliberate indifference test], a . . . claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; *it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.*" *Farmer,* at 842, 114 S.Ct. at 1981, 128 L.Ed.2d at 828 (emphasis added). Contrary to the defendants' assertions that the Fifth Circuit requires intent to harm, this court finds nothing in *Hare IV* which requires this court to ignore the United States Supreme Court directive on the matter. Indeed, the Fifth Circuit has directed that the

duty owed Ms. Hare is identical to that enunciated in *Farmer. Hare IV,* 74 F.3d at 643.

Even in light of the Fifth Circuit's pronouncement of the new standard to be applied in this case, this court finds summary judgment is inappropriate based upon the facts presently before the court. When this court previously denied the grant of summary judgment to the individual defendants, it noted:

> The undersigned concludes that enough evidence and reasonable inferences exist at this point so that a reasonable juror could determine that the conduct of the custodial defendants fell somewhere between the parameters of negligence and deliberate indifference (*negligence and deliberate indifference inclusive* ).

*Hare I,* 814 F.Supp. at 1322 (emphasis added). This court has already determined that a reasonable juror could find that the actions of the custodial defendants constituted deliberate indifference, and the court finds that the same is true today in light of the facts and circumstances in this case. The conversion to a subjective knowledge requirement does not change this court's conclusions when considering the particular facts at bar.

 Again, the defendants read too much into *Hare IV.* For example, this court also previously noted that "Captain Burns' subjective belief of the seriousness of the statement is not the criteria by which one is to determine whether the officer knew or should have known of the vulnerability [to suicide]." *Hare I,* 814 F.Supp. at 1321. Now that the objective nature of the liability analysis has changed, the defendants reargue the fact that Captain Burns has stated that he did not take Ms. Hare's suicide threat seriously as grounds for his entitlement for summary judgment. It is important to note that while Captain Burns' impression of the seriousness of the risk of harm to Ms. Hare is relevant, the "substantial" nature of the risk and the "seriousness" of the harm threatened are questions of fact for the jury to decide. The subjective nature of the *Farmer* and *Hare IV* analyses are relevant when determining whether or not the officer had actual knowledge of the existence of the risk, but not at all dispositive of whether or

not the risk itself was in fact a substantial one of serious harm. An officer cannot escape liability by being actually aware of an objectively substantial risk of serious harm which he subjectively believes is not substantial. To do so would only protect detainees and inmates from risks of harm that prison officials deem substantial. This portion of the deliberate indifference inquiry focuses upon subjective *knowledge*, not subjective *seriousness*. *See, e.g., Grabowski v. Jackson Co. Public Defender's Office*, 47 F.3d 1386, 1396 (5th Cir.1995) (risk must be objectively serious); *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir.1996) (same); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir.1996) (same). The substantial nature of the risk of harm is also still determined objectively. *See, e.g., Farmer*, at 833–34, 837–38, 114 S.Ct. at 1977, 1979; *Pope v. Shafer*, 86 F.3d 90, 91 (7th Cir.1996) (risk of harm must be objectively substantial); *Rossell v. Thomas*, 34 F.3d 1073, 1994 WL 465847, *1 (9th Cir. (Ariz.)) (same). When considering all of the facts in the light most favorable to the plaintiff in this case, there remain genuine issues of material fact as to whether the custodial defendants:

1) had actual knowledge of an objectively substantial risk of serious harm to Tina Hare (*or* whether that objectively substantial risk of serious harm was obvious); and

2) responded to that known or obvious risk of harm with deliberate indifference.

The defendants are not entitled to the entry of a judgment as a matter of law on the merits of this case, and the motion shall be denied to the extent that this matter is again before the court.

### C. Qualified Immunity

■■■■ Public officials, including law enforcement officers such as the individual defendants, are entitled to assert the defense of qualified immunity in a § 1983 suit for discretionary acts occurring in the course of their official duties. *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396, 403 (1982); *Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir.1986); *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir.1986). Public officials are shielded from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Davis v. Scherer*, 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *White v. Walker*, 950 F.2d 972, 975 (5th Cir.1991); *Morales v. Haynes*, 890 F.2d 708, 710 (5th Cir.1989). Stated differently, qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, ·106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

■■■■ The first step in the inquiry of the defendants' claim of qualified immunity is whether the plaintiff has alleged the violation of a clearly established right. *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 1793–94, 114 L.Ed.2d 277, 287 (1991). This initial inquiry necessarily leads to the second one, which questions whether or not the officer acted reasonably under settled law in the circumstances with which he was confronted. *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589, 596 (1991); *Lampkin v. City of Nacogdoches*, 7 F.3d 430 (5th Cir.1993). "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir.1994) (quoting *Pfannstiel v. Marion*, 918 F.2d 1178, 1183 (5th Cir.1990)). Even if the defendants violated Tina Hare's constitutional rights, they are entitled to immunity if their actions were objectively reasonable. *Blackwell*, 34 F.3d at 303.

■■■ In the most recent submissions to the court, the defendants effectively argue that the subjective nature of the standard of liability imposed upon the plaintiff also imposes a subjective element to the qualified immunity analysis. However, in no part of the *Hare IV* opinion does the Fifth Circuit change the objective character of the qualified immunity reasonableness inquiry into a subjective one. Indeed, in opinions that they have issued subsequent to *Hare IV*, the Fifth Circuit has continued to follow the United

States Supreme Court directive that this court must look to the objective reasonableness of the actions of the defendant public officials—even in cases where the merits of the plaintiff's claim hinge upon demonstrating deliberate indifference. *See, e.g., Nerren v. Livingston Police Dept.,* 86 F.3d 469, 473 (5th Cir.1996); *Cantu v. Rocha,* 77 F.3d 795, 805 (5th Cir.1996). In sum, the mere fact that the plaintiff, in order to prevail on the merits, must establish subjective deliberate indifference on the part of the defendants does not mean that the objective nature of the qualified immunity analysis is any different. Indeed, while acknowledging that the objective nature of qualified immunity has not changed, some courts have even questioned whether the doctrine of qualified immunity has any worth in cases involving *Farmer*'s deliberate indifference standard.

> It is ... difficult to imagine factual circumstances in which a trier of fact could find deliberate indifference as defined by *Farmer* and nevertheless conclude that a reasonable person in [the] defendant's position was not chargeable with knowledge that his or her actions violated the plaintiff's clearly established constitutional rights.

*Scott v. Abate,* 1995 WL 591306, *10 n. 5 (E.D.N.Y. Sep. 27, 1995), (quoting *Briecke v. Coughlin,* 1994 WL 705328, *6 (N.D.N.Y. Dec. 16, 1994).

1) Was the law clearly established?

A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue.

*Elder v. Holloway,* 510 U.S. 510, 513, 114 S.Ct. 1019, 1022, 127 L.Ed.2d 344 (1994) (quoting *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

 Central to the defendants' argument on this point is that since the 1996 Fifth Circuit decision *Hare IV* enunciated a new standard of law premised upon the 1994 United States Supreme Court decision of *Farmer v. Brennan,* the law now relevant to the time of the defendants' conduct in question cannot have been "clearly established" at the time of those actions in 1989. The defendants are correct insofar as the extent of a pretrial detainee's rights as explained by *Hare IV.* Nevertheless, what has remained constant in civil rights law for quite some time is that Fourteenth Amendment due process guarantees protect the rights of pre-trial detainees *at least as much* as the Eighth Amendment protects the rights of convicted inmates. *City of Revere v. Mass. General Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605, 611 (1983); *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979); *Partridge v. Two Unknown Police Officers,* 791 F.2d 1182, 1187 (5th Cir.1986). Since at least 1976, it has been well established that the Eighth Amendment requires prison officials not to be deliberately indifferent to the serious medical needs of inmates. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In light of *Estelle, Bell* and *City of Revere,* the duty of law enforcement officials not to be deliberately indifferent to the serious medical needs of pretrial detainees has long since been the *minimum* duty owed to a pretrial detainee. *See, e.g., Partridge v. Two Unknown Police Officers,* 791 F.2d 1182, 1187 (5th Cir.1986); *Jones v. Diamond,* 636 F.2d 1364, 1378 (5th Cir.1981); *Hare I,* 814 F.Supp. at 1320. What once was the minimum standard is now the extent of the standard under *Hare IV.* This previously-existing minimum standard that has long existed has now been imposed upon those defendants by the Fifth Circuit in this case as the limit upon their obligation, and now the defendants in essence contend that the law was not clearly established in 1989 that they owed a duty to Tina Hare not to be deliberately indifferent to her serious medical needs while housed in the Corinth City Jail as a pretrial detainee. This court fails to see the logic behind this claim, for these defendants have long since owed this duty to its pretrial detainees. The only change pursuant to *Hare IV* is that the defendants owed her no more of a duty than that. Further, the fact that *Hare IV* may have changed the knowledge requirement from an objective one to a subjective one likewise affords the defendants no solace. The state of the

knowledge requirement in 1989, as described in the standard applied by this court in *Hare I*, was that the custodial officer "knew or should have known" of the risk of harm—encompassing both subjective and objective knowledge as sufficient. *Hare I*, 814 F.Supp. at 1320. Pursuant to *Hare IV*, the standard has become that the custodial officer "knew" of the risk—covering only the subjective aspect of the officer's knowledge. Regardless of which standard is looked to, subjective knowledge of the risk has been clearly established in the law as sufficient to subject them to liability. It was clearly established in 1989 that these defendants owed to Tina Hare a duty to *at least* not to have *subjective* knowledge of a substantial risk of serious harm to her (i.e., a substantial risk that she would commit suicide) and then to be deliberately indifferent to that risk. That the standard no longer reaches beyond that level does not mean that the law was not clearly established to this extent at the time of the officers' actions in this case.

### 2) Did the individual act reasonably under the circumstances?

 Disputed issues of material fact relevant to the qualified immunity analysis which would preclude the grant of summary judgment on the issue are those centering around the "objective reasonableness" of the defendants' alleged actions—the final inquiry of the qualified immunity analysis. *See, e.g., Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir.1994); *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir.1993) ("Rule 56 still has vitality in qualified immunity cases if [there are] underlying historical facts in dispute that are material to resolutions of the questions **whether the defendants acted in an objectively reasonable manner in view of the existing law and facts available to them.**") (emphasis added); *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 601 (5th Cir.1988) ("Had appellants timely asserted the question of qualified immunity, subsidiary questions of fact might have arisen, such as what information they possessed that might have led a reasonable person to believe that [their action] was lawful."). This court takes as true, for purposes of the qualified immunity analysis, the plaintiff's allegations

as to what actions the defendants actually took or failed to take. Thus, the issue is an "objective (albeit fact-specific) question whether a reasonable officer could have believed" that he was violating the plaintiff's constitutionally protected rights "under the circumstances of the **complained of** action." *Mangieri*, 29 F.3d at 1017 (emphasis added) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir.1990)); *see Hale v. Townley*, 45 F.3d 914, 918 (5th Cir.1995) ("Factual allegations are examined to determine whether they would be sufficient, if proven, to establish a violation of clearly established law."). In its most basic terms, this court must 1) assume that the official committed the acts of which the plaintiff complains, 2) determine what relevant facts and circumstances surrounded the action, including what facts the official was aware of or should have been aware of when taking the alleged action, and 3) objectively determine as a matter of law whether a reasonable official in the defendants' position would have believed that he was violating clearly established constitutional rights by taking such action. Only the second of these inquiries has the potential to raise genuine issues of material fact, and only the presence of such issues would allow the submission of the immunity question to the finder of fact. *Brown v. Bryan County*, 67 F.3d 1174, 1181 n. 14 (5th Cir.1995); *Mangieri*, 29 F.3d at 1017–18; *Lampkin*, 7 F.3d at 434–36.

 To routinely equate the immunity question to the question of the merits would make the court's determination of immunity on summary judgment no different than a determination of the merits on summary judgment. This is wholly impractical considering that a determination of immunity is to be made at the earliest possible stage, even before discovery is conducted. *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) ("Immunity ordinarily should be decided long before trial."); *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (stating whenever qualified immunity is asserted as affirmative defense resolution of issue should occur at earliest possible stage); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994)

(stating that issues of qualified immunity are determined from face of pleadings without extended resort to pre-trial discovery). Nevertheless, it is possible that the merits of a case are so inexorably intertwined with the inquiry of "objective reasonableness" that they cannot be separated.[3] Such a situation has arisen here, and this court cannot say that the defendants are entitled to the entry of a judgment as a matter of law on the issue of their entitlement to qualified immunity. Most, if not all, of the same genuine issues of material fact which preclude the grant of summary judgment on the merits of this action also preclude a grant of summary judgment on qualified immunity.

 As already noted by the court in this case, this court has determined that there remain genuine issues of material fact as to whether the actions of the custodial defendants amount to deliberate indifference in this case. These same defendants now argue to the court that "[t]his court made [its previous] holding based upon a set of *undisputed* facts leaving only a legal question to be decided. If this court cannot determine after diligent research and the benefit of hindsight whether the defendants' actions were deliberately indifferent based upon a set of undisputed facts, then the defendants should certainly could not in July, 1989, and therefore, are, entitled to qualified immunity." Defendants' Supplemental Brief, p. 17 (text as in original). The ultimate factual determination of whether or not these defendants were deliberately indifferent is itself a disputed question of fact. *See, e.g., Estate of Cole by Pardue v. Fromm,* 94 F.3d 254, 260 (7th Cir.1996); *Miller v. Schoenen,* 75 F.3d 1305, 1311 (8th Cir.1996); *Kirk v. Simpson,* 35 F.3d 566, 1994 WL 443461, *1 (6th Cir.(Tenn.)); *Archibeque v. Wylie,* 16 F.3d 415, 1994 WL 41272, *3 (10th Cir.(N.M.)); *Greason v. Kemp,* 891 F.2d 829, 835 (11th Cir.1990). Its determination is the responsibility of the jury in this case, and does not rest with this court as it is a determination of fact:

The federal system is an independent system for administering justice to litigants

who properly invoke its jurisdiction. An essential characteristic of that system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury and, under the influence—if not the command—of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury.

*Gasperini v. Center for Humanities, Inc.,* — U.S. ——, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (quoting *Byrd v. Blue Ridge Rural Elec. Cooperative, Inc.,* 356 U.S. 525, 537, 78 S.Ct. 893, 901, 2 L.Ed.2d 953 (1958)). This court is nevertheless fully capable of making findings of fact as well as conclusions of law if the parties wish to waive their right to a jury trial in this case. That it is not this court's place to make this factual determination at the summary judgment stage lends no decisive weight to the determination of whether the defendants are actually entitled to the protection of qualified immunity. There remain genuine issues of material fact as to whether the actions of the custodial defendants were objectively reasonable in light of existing law. As such, an award of summary judgment on the issue is inappropriate. The defendants are not entitled to the entry of a judgment as a matter of law.

V. Conclusion

Even in light of the new standard established by the Fifth Circuit in this cause, the undersigned finds that there remain genuine issues of material fact which preclude the granting of summary judgment on the issues of both liability and qualified immunity as to the individual custodial defendants in the case at bar. To the extent that the Fifth Circuit Court of Appeals has returned those issues to the undersigned for a new determination of the defendants' motion for summary judgment, that motion shall be denied.

A separate order in accordance with this opinion shall issue this day.

---

**3.** For example, this would most likely occur in a claim of false arrest, where another reasonableness inquiry as to "probable cause" dictates the merits of a claim. *But see Mangieri,* 29 F.3d at

1016–18 (finding officer entitled to qualified immunity on false arrest claim when parties generally agreed to facts underlying suit).